**Opinion issued October 8, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00542-CV

———————————

**BRAZORIA COUNTY, Appellant**

**V.**

**EUGENE ELDRIDGE AND RAYMOND PERRY, Appellees**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 69510

## MEMORANDUM OPINION

This is premises liability case.  Eugene Eldridge and Raymond Perry sued

Brazoria County for personal injuries they sustained in a car accident on County

Road 128.  Brazoria County filed a plea to the jurisdiction, seeking dismissal of the

suit. The trial court denied the County's plea. In one issue on appeal, the County asserts that the trial court erred by denying its plea to the jurisdiction.

We reverse the trial court's order denying the County's plea to the jurisdiction and render judgment dismissing the claims.

## Background Summary

As part of a federally-funded program to replace deficient bridges, the Texas Department of Transportation ("TxDOT"), acting on behalf of the State of Texas, entered into an Advance Funding Agreement with Brazoria County in 2005 to replace a county-owned bridge, which crossed a drainage ditch on County Road 128. The Advance Funding Agreement states that "[the County] authorizes the State, its consultant, contractor, or other designated representative to enter the site(s) of said bridge(s) and adjacent right of way or relocation right of way to perform surveys, inspections, construction and other activities necessary to replace or rehabilitate said bridges and approaches." The agreement provides that "[t]he State shall advertise for construction bids, issue bid proposals, receive and tabulate the bids and award and administer the contract for the construction of the Project. Administration of the contract includes the responsibility for the construction engineering and for issuance of any change orders. . . ." Under the heading "Responsibilities of the Parties," the document states: "The parties to this Agreement agree that no party is an agent, servant, or employee of the other party

2

and each party agrees it is responsible for its individual acts and deeds as well as the acts and deeds of its contractors, employees, representatives, and agents."

In March 2010, TxDOT sent a letter to Brazoria County, stating that TxDOT had developed the construction plans for the bridge project on CR 128. TxDOT informed the County that it expected to let the contract for the bridge reconstruction in July 2010. TxDOT notified the County that it expected CR 128 to be closed for four months during the bridge reconstruction. Along with the letter, TxDOT provided to the County TxDOT's construction schedule and schematics, depicting TxDOT's traffic control plan for the bridge reconstruction project. The schematics showed where signage, such as detour and "bridge closed" signs, would be placed.

By April 2012, the bridge reconstruction project was underway. At that time, the bridge crossing the drainage ditch on CR 128 had been removed. Traffic control signs warning of the bridge outage had been posted. On Friday, April 20, 2012, the area experienced storms, including gusting wind. As a result of the storms, the traffic control signs, warning of the bridge outage, were blown over. In the early morning hours of Monday, April 23, 2012, Eugene Eldridge and Raymond Perry were traveling in their car on CR 128. When they came to the location where the bridge had been removed, their car fell into the drainage ditch.

Eldridge and Perry sued Brazoria County for the personal injuries they allegedly sustained in the car accident. In their live petition, Eldridge and Perry pleaded the following factual allegations:

> The bridge on CR 128 was torn out to be rebuilt or to be replaced. The County posted warning signs for the hazardous condition posed by the missing bridge. On April 20, 2012, the area experienced severe storms, with gusting winds. All warning signs were blown over, or lost in the storm. The County was notified of the dangerous condition posed by the bridge being removed, and the absence of warnings. Thin barricades were placed at the immediate entrance to the pit, but no warnings were posted along the road to give drivers advance notice of the bridge being out.
>
> On April 23, 2012, Plaintiffs were driving on CR 128. There were no advance warning signs. Plaintiffs did not know that the bridge was out. Plaintiffs saw the barricades only immediate [sic] to colliding with them. Plaintiffs were unable to stop before pitching over the embankment and onto the stream bed below.
>
> Plaintiff K.C. Eldridge was driving. Plaintiff Perry was a passenger in the vehicle. Both plaintiffs were severely injured in the wreck.

The petition averred that the County was negligent because it had failed "to provide any warning of the hazardous condition of the premises defect created by the removal of the bridge" and "by the debris remaining from [its] removal." Eldridge and Perry allege that the County was negligent because it failed "to replace road signs, or warning devices after notice and within a reasonable time."

4

Eldridge and Perry claim that the County's immunity from suit was waived by certain provisions of the Texas Tort Claims Act. Particularly, they alleged that their claims fall within the limited waiver of governmental immunity set out in sections 101.021(2) and 101.022(a) of the Act for claims arising from premise defects or special defects. They further alleged that the County's immunity from suit was waived pursuant to Texas Tort Claims Act section 101.060(a)(2) because the County "did not replace the warning signs within a reasonable time after being notified of their absence due to the storm."

During the pendency of this case, the County has filed two pleas to the jurisdiction. In its first plea, the County asserted that it retained its governmental immunity from suit because neither the pleadings nor the jurisdictional evidence showed that the alleged personal injuries had been caused by an act or omission of a County employee. The trial court granted the County's plea and dismissed the suit. Eldridge and Perry appealed, asserting that it was not necessary for them to show that their premises-defect claims were derived from an act or omission of a county employee. We agreed, reversing the dismissal judgment and remanding the case to the trial court. *Eldridge v. Brazoria Cty.*, No. 01-13-00314-CV, 2014 WL 1267055, at *6 (Tex. App.—Houston [1st Dist.] Mar. 27, 2014, no pet.) (mem. op.).

Once the case was remanded, the County filed a second plea to the jurisdiction with supporting jurisdictional evidence. The County acknowledges that, under the Tort Claims Act, it waived its governmental immunity for the premises-liability claims to the extent that a similarly-situated private party would be liable. *See* TEX. CIV. & PRAC. REM. CODE ANN. § 101.021 (Vernon 2011).

In its plea, the County claims that it retains its governmental immunity from suit because it owed no legal duty to plaintiffs Eldridge and Perry with respect to their alleged injuries. The County asserts that the plaintiffs did not allege that the County was "the actual owner or possessor" of the property where the accident occurred. Pointing to its proffered jurisdictional evidence, the County claims that it did not control the premises at the time of the accident. Rather, the County avers that the Texas Department of Transportation (TxDOT), and the contractor hired by TxDOT to complete the bridge-replacement project, controlled the premises at that time.

Among its evidence, the County offers the Advance Funding Agreement between the County and TxDOT. It also offers the March 2010 letter from TxDOT to the County with the attached construction schedule and traffic control plans, including the schematics showing placement of traffic control and warning signs for the project.

As a facet of its jurisdictional argument, the County asserts that it had no awareness or notice that the signs, warning motorists of the missing bridge, were no longer in place at the time of the accident. The County offers evidence to show that this lack of awareness of the missing signs derived from its lack of control over the bridge reconstruction work and the attendant activity of posting warning signs to inform motorists of the missing bridge. In support of its position, the County offers the affidavit of its assistant county engineer, Michael Shannon, who testified, in part, as follows:

> 3. . . . Under the [Advance Funding Agreement], the County had pre-construction responsibilities of securing the right-of-way and adjustment, removal and relocation of utilities and post construction responsibilities of accepting the project once it was completed and maintaining it. TxDOT was responsible for architectural [sic], engineering and construction. TxDOT provided the Brazoria County Engineering Department a copy of the architectural plans, its proposed construction schedule, and its traffic control plan. The County did not create or design any of these plans or schedules. TxDOT was not acting as an agent of the County during the demolition/reconstruction of the bridge on CR 128[.]

> 4. Brazoria County did not participate in any manner in the demolition/reconstruction of the bridge, this included the hiring of the contractor, marking the traffic route detours, deciding which signs, if any would be used, if/where they would/would not be placed nor if/how they would be maintained. The County did not have a crew on the site, nor did not direct the day to day activities of the construction company. Under the provisions of TxDOT's Advanced Funding Agreement which Brazoria County followed, the County accepted possession of the project once it was completed.

> 5. Brazoria County Engineering Department has a system by which it documents complaints, questions, or concerns The Engineering

7

Department did not receive any complaints regarding missing warning signs related to demolition/reconstruction of the bridge on County Road 128 during the demolition/reconstruction process.

The County also offers the affidavit of a resident, Lang Smith, who lived near the bridge.[1] Smith stated that the accident occurred on an early Monday morning in May 2012, around 4:30 or 5:00 a.m.[2] According to Smith, the car had crashed into "the ditch, across the creek from [his] house" where the bridge had been removed. Smith stated that it appeared the car had been traveling eastward on CR 128, from the direction of CR 99, when it came to the ditch where the bridge was missing. Smith testified that, after the accident, he went to the intersection of CR 128 and CR 99, the direction from which the car had traveled, to determine whether there were any warning signs regarding the missing bridge. Smith stated that, "[a]pproximately 50 feet or so from CR 99 on CR 128 there was a sign in the ditch parallel to the road which was a detour sign with an arrow." Smith continued, "I was trying to find signs that they [sic] could be placed for traffic control, that is when I noticed the sign in the ditch. The sign was not visible to traffic unless you stopped to read it."

Smith indicated that, before the accident, the construction company had placed flashing warning signs near the bridge site "to show traffic that the bridge

---

[1] Smith's affidavit had originally been offered by the plaintiffs in support of their response to the County's first plea to the jurisdiction.

[2] It is not in dispute that the accident occurred in April 2012.

8

was out." He testified that "the Friday before the accident there was a very hard wind and rain storm. I recall the signs on the east side of the bridge, which I could describe as my side of the bridge had blown down." Smith stated that, at the time of the accident, he, the owner of the construction company, and one of the occupants of the car were talking about the accident. Smith testified,

> The owner [of the construction company] told us he had been around on Sunday (which was the day before the accident) and saw the sign on my side of the bridge had been blown down. He told us he didn't pick up the sign because he didn't think he needed the sign down there. He also said he not tell if the signs on the CR 99 side [where the accident later occurred] were down because the crane was in the way and he could not see them.

Smith's affidavit also indicated that he had previously discussed deficiencies regarding the traffic control devices with TxDOT and with the construction company. However, Smith did not indicate that he had discussed any deficiencies with the County.

Eldridge and Perry (hereinafter "Appellees") filed a response to the County's second plea to the jurisdiction. In the response, Appellees assert that the County, as the premises owner, had a duty to warn of the missing bridge. Appellees claim, "As shown by [Smith's affidavit], the County of Brazoria was actually providing safety and traffic controls, but when notified that the traffic controls were blown away by inclement weather, failed to replace the traffic controls." Appellees had made a similar allegation in their petition, in which they

9

alleged that the County had posted the warning signs regarding the missing bridge and had been notified that the signs were blown down in the storm. In their response to the County's plea, Appellees further assert that they filed suit because "the County of Brazoria failed to re-post warning signs of a bridge that had been removed for reconstruction."

The trial court denied the County's second plea to the jurisdiction. This interlocutory appeal followed. In one issue, the County asserts that the trial court erred when it denied its plea.

## Plea to the Jurisdiction

### A.     Standard of Review

Whether subject-matter jurisdiction exists is a question of law that can be challenged, as it was here, by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review de novo the disposition of Texas City's jurisdictional plea. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Because we address a plea to the jurisdiction in which disputed evidence implicates both the court's subject-matter jurisdiction and the merits of the case, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question

10

regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder. *Id.* at 227–28. If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law. *Id.* at 228.

## B.    Governmental Immunity

Without a valid statutory or constitutional waiver, a trial court lacks subject-matter jurisdiction to adjudicate a lawsuit against a political subdivision, such as Brazoria County. *See Suarez v. City of Tex. City*, No. 13–0947, 2015 WL 3802865, at *5 (Tex. June 19, 2015); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010). The Texas Tort Claims Act waives a governmental unit's immunity from suit but only "to the extent of liability created by [the Act]." TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2011). The immunity waiver is therefore intertwined with the merits of a claim under the Tort Claims Act. *Suarez*, 2015 WL 3802865, at *5.

The Act further provides that a governmental unit is liable for "personal injury and death so caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2011); *see State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006). Here, Appellees allege that the bridge outage constituted an ordinary and a special premises defect of which the County, as owner of the property, had a duty to warn.

In ordinary premises-defect cases, the governmental unit owes "only the duty [of care] that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (Vernon 2011). Under Texas law, a licensor of real property owes a duty not to injure the licensee by willful or wanton acts or omissions or gross negligence. *City of Denton v. Paper*, 376 S.W.3d 762, 766 (Tex. 2012) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). When the governmental unit has actual knowledge of a dangerous condition and the licensee does not, the government must either warn the licensee or make the condition safe. *Paper*, 376 S.W.3d at 766 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)).

When a special premises defect exists, the government owes the same duty to users that a private landowner owes to an invitee. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 654–55 (Tex. 2012). Generally, premises owners have a duty to invitees to make the premises safe or to warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not. *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015); *Henkel v. Norman*, 441 S.W.3d 249, 250 (Tex. 2014).

**C.    Analysis**

The record shows that the County owns the bridge.[3]  Resultantly, Appellees base their claims against the County on a landowner's general duty either to make safe the premises defect or to warn of hidden, unsafe conditions known to the landowner.  *See Henkel*, 441 S.W.3d at 251.  Appellees' allegations and the County's jurisdictional evidence show that warning signs notifying motorists of the bridge outage were, in fact, erected.  Appellees' allegations and the jurisdictional evidence further show that some, or all, of these warning signs were blown down by the storm on Friday night, April 20, 2012.  The signs had not been re-erected by the early morning hours of Monday, April 23, 2012, when Appellees' car happened upon the site of the missing bridge and fell into the creek bed below.

Unlike many cases, this is not one in which the plaintiffs claim that no warnings of the premises defect were ever given.  Nor is it a case in which the posted warnings were alleged to be inadequate to notify the invitee of the danger.  A different issue is presented here.  As framed, the dispute is whether the County had a duty to re-post the warning signs after they were blown down by the storm.  In such a dispute, the missing signs themselves become akin to a premises defect,

---

[3]    The County asserts that Appellees failed to allege in their petition that the County is the premises owner.  We note that Appellees allege in their petition the duty of care a landowner owes a licensee, and in so doing specifically references the term "landowner."  Moreover, the Advance Funding Agreement, offered by the County to support its plea to the jurisdiction, expressly states that the County is the owner of the bridge.

which Appellees assert the County had a duty to remedy. The County asserts that it owed no duty to Appellees to re-post the warning signs, claiming that TxDOT and its contractor, who had posted the warning signs, controlled the premises during the bridge reconstruction. As a corollary to this assertion, the County avers that it was not aware that the signs were blown down by the storm.

For argument's sake, we assume, without deciding, that the missing bridge was a special defect and that, consequently, Appellees were invitees. We thus apply the corresponding heightened duty of care owed to an invitee as compared to the lesser duty owed to a licensee.

A landowner owes an invitee a duty to exercise ordinary care to protect them from those risks of which the owner is actually aware and also those risks of which the owner should be aware after reasonable inspection. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). However, a landowner's duty to an invitee is not absolute. *Austin*, 465 S.W.3d at 203. A landowner is not the insurer of an invitee's safety. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010). Rather, a landowner's premises-liability duties, like its negligence duties, are limited to a duty to exercise ordinary, reasonable care. *Austin*, 465 S.W.3d at 203. To prevail on a premises liability claim against a landowner, a plaintiff-invitee must prove that (1) the landowner had actual or constructive knowledge of some condition on the premises, (2) the condition posed an unreasonable risk of

harm, (3) the landowner failed to exercise reasonable care to reduce or eliminate the risk, and (4) the landowner's failure to use such care proximately caused the plaintiff's injuries. *Motel 6 G.P*, *Inc.*, 929 S.W.2d at 3.

The existence of actual or constructive knowledge of a premises defect is a threshold requirement for a premises liability claim. *Id.* An invitee must show that a landowner either knew or, after reasonable inspection, should have known of an unreasonably dangerous condition before asserting that the landowner breached a duty by failing to take precautions. *Id.* at 3–4. The plaintiff's failure to meet the threshold burden of demonstrating the owner actually knew or through the exercise of reasonable care should have known of an unreasonably dangerous condition defeats his claim. *See id.* at 4. A landowner does not owe a duty to remedy a defect of which it is not and should not be aware; and a landowner cannot breach a duty that it does not owe. *See id.*

Appellees have made certain allegations that are relevant to whether the County had actual or constructive awareness that the warning signs were missing. They assert that it was the County that posted the warning signs and that the County had been notified that the signs were blown down by the storm. Specifically, Appellees allege, "The County had posted warning signs for the hazardous condition posed by the missing bridge." They further claim, "[T]he County did not replace the warning signs within a reasonable time after being

notified of their absence due to the storm. . . ." Similarly, when they responded to the County's plea, Appellees averred that "the County of Brazoria was actually providing safety and traffic controls, but when notified that the traffic controls were blown away by inclement weather, failed to replace the traffic controls."

The County asserts that it was not aware that the warning signs had been blown down during the storm. In support of this assertion, the County offered the affidavit of its assistant county engineer, Michael Shannon. His testimony indicates that the County had not been notified that the warning signs were missing. Shannon testified that the County "did not receive any complaints regarding missing warning signs related to demolition/reconstruction of the bridge on County Road 128 during the demolition/reconstruction process." Appellees offered no evidence to controvert Shannon's affidavit testimony.

The County also points to the affidavit of Lang Smith, the resident who lives near the bridge. Smith stated that the owner of the construction company told him, at the accident scene, that he had been to the location the day before the accident. The owner told Smith he had seen that the warning signs on the other side of the bridge were down, but he had decided that they were not needed. Smith's testimony did not indicate that the County was aware that any warning signs were missing. Smith's testimony further indicated that he had spoken with either

TxDOT or the construction contractor in the past regarding issues relating to the traffic-control signs, but Smith did not mention the County.

The jurisdictional evidence also refutes Appellees' claim that the County—either directly or through the hiring or control of the construction contractor—had posted the warning signs. In his affidavit, Shannon testified,

> 3. . . . Under the [Advance Funding Agreement], the County had pre-construction responsibilities of securing the right-of-way and adjustment, removal and relocation of utilities and post construction responsibilities of accepting the project once it was completed and maintaining it. TxDOT was responsible for architectural [sic], engineering and construction. TxDOT provided the Brazoria County Engineering Department a copy of the architectural plans, its proposed construction schedule, and its traffic control plan. The County did not create or design any of these plans or schedules. TxDOT was not acting as an agent of the County during the demolition/reconstruction of the bridge on CR 128[.]
>
> 4. Brazoria County did not participate in any manner in the demolition/reconstruction of the bridge, *this included the hiring of the contractor, marking the traffic route detours, deciding which signs, if any would be used, if/where they would/would not be placed nor if/how they would be maintained*. The County did not have a crew on the site, nor did not direct the day to day activities of the construction company. Under the provisions of TxDOT's Advanced Funding Agreement which Brazoria County followed, the County accepted possession of the project once it was completed.

(Emphasis added.)

Appellees offered no evidence to controvert Shannon's testimony. In addition, consistent with Shannon's testimony, the Advance Funding Agreement between TxDOT and the County provides, "The parties to this Agreement agree

17

that no party is an agent, servant, or employee of the other party and each party agrees it is responsible for its individual acts and deeds as well as the acts and deeds of its contractors, employees, representatives, and agents."

We recognize that a landowner has a duty to "take whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983). The landowner's duty to an invitee requires the owner to make such an inspection of the premises to discover hidden dangers as would be made by a reasonably prudent person in the exercise of ordinary care. *City of Beaumont v. Graham*, 441 S.W.2d 829, 834 (Tex. 1969). Here, the County asserts that it had no control over the bridge reconstruction work, including the posting and maintenance of the warning signs; rather, those aspects of the project were implemented and controlled by TxDOT and the construction contractor hired by TxDOT. This assertion implicates the inquiry whether the County had a duty to inspect the site during the weekend following the storm.

As discussed, Shannon's affidavit shows, with respect to the bridge reconstruction project, the County did not hire the construction contractor, did not mark the traffic route detours, did not decide which signs, if any, would be used, and did not decide where the signs would be placed or how they would be

18

maintained. The County also did not have a crew on site or "participate in any manner in the demolition/reconstruction of the bridge."

Shannon's testimony is corroborated by other jurisdictional evidence in the record, including the Advance Funding Agreement, which provides that "[t]he State [TxDOT] shall advertise for construction bids, issue bid proposals, receive and tabulate the bids and award and administer the contract for the construction of the Project. Administration of the contract includes the responsibility for the construction engineering and for issuance of any change orders. . . ."[4] Similarly, the March 2010 letter from TxDOT to the County, indicating that a construction contract would soon be let, informed the County that CR 128 would be closed for four months during the project and provided the County with TxDOT's schematics for the project, including its traffic control plans and signage.

In addition, Smith's affidavit further corroborates Shannon's testimony. Smith testified that the owner of the construction company admitted to being at the site on Sunday, the day before the accident. The contractor had noticed a warning sign was down, but he had decided not to repost the sign because he did not think

---

[4]     Appellees assert that a resolution, passed by the County and made part of the Advance Funding Agreement, creates a fact issue regarding whether the County had control over the bridge reconstruction in this case. Appellees point to language in the resolution stating that the County assumed "all responsibilities for engineering and construction" for "the structures being improved." However, this portion of the County's resolution pertains to bridge reconstruction projects defined as "equivalent-match projects." Under the terms of the resolution, the bridge reconstruction project involved in this case was not an equivalent-match project.

that it was needed.[5] Smith also testified that, in the past, he had spoken with TxDOT and with the construction contractor about the traffic control signs for the project. Smith did not indicate that he had spoken with the County or that the County had been present at the construction site at any time. In short, Smith's affidavit indicates that TxDOT and its construction contractor were maintaining and controlling the site, including the warning signs.

"[L]liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition, not on whether a specific set of facts or a specific breach of duty is established." *Motel 6 G.P., Inc.*, 929 S.W.2d at 4 (citing *Corbin*, 648 S.W.2d at 295). Here, the County offered jurisdictional evidence showing that it was not in control of the work to reconstruct the bridge, including the attendant placement and maintenance of the warning signs. Appellees have offered no evidence to controvert this. Further, it is undisputed that, before the storm, warning signs were in fact posted to notify motorists of the bridge outage.

Appellees offer no evidence to otherwise demonstrate that, under these circumstances, a prudent landowner acting with ordinary care would have nonetheless inspected the premises following the storm. Nothing in the record indicates that, after the storm, the County had any reason to believe that TxDOT or

---

[5] The record indicates that the warning sign the contractor had noted as being blown down was on the opposite side of the bridge from where the accident occurred.

the construction contractor would not continue to maintain the site, including the warning signs, as they had done before the storm. Indeed, the record shows that the contractor visited the site after the storm, on Sunday, the day before the accident and had noted a warning sign down but had decided not to re-post it. No evidence was presented to show that the County was aware of the contractor's discovery or of his decision.

Given that warning signs had been posted and that the County was not in control of the work or the signage, the situation did not suggest to the County that an investigation or an inspection was needed during the weekend following the storm. In this regard, the evidence establishes that, under the circumstances, a reasonably prudent person—in the County's position exercising ordinary care— would not have inspected the premises after the Friday night storm and before the Monday morning accident. No evidence shows to the contrary. Thus, the County had no duty to inspect the premises during the relevant time frame.

In sum, there is no evidence that the County had actual knowledge that the warning signs were knocked over by the storm. In addition, even though an inspection likely would have revealed the missing signs, the evidence shows that the County had no duty, as a matter of law, to inspect the premises to determine whether the storm had knocked the signs down. Without a duty to inspect, there is no evidence that the County had constructive knowledge that the signs were

missing. *See Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Constructive knowledge, which is defined as knowledge that a person*, after reasonable inspection*, ought to have or has reason to have, may be imputed when the premises owner-operator had a reasonable opportunity to discover and to remedy an allegedly dangerous condition." (emphasis added)).

Construing the evidence and every reasonable inference in Appellees' favor, we conclude that there is no evidence on which a reasonable factfinder could conclude that the County had actual or constructive knowledge of the missing warning signs. As a result, the County had no duty to Appellees, as either invitees or licensees, to repost the warning signs at the time of the accident. *See Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (explaining that under licensee standard, "a plaintiff must prove that governmental unit had actual knowledge of a condition," whereas under invitee standard, a plaintiff need only prove that governmental unit should have known of the condition). Because the evidence fails to raise a genuine and material fact issue concerning the duty owed to support either ordinary or special premises liability, we hold that the County retains immunity from suit and thus the trial court lacks jurisdiction over Appellees' claims.

We sustain the County's sole issue.

## Conclusion

We reverse the order of the trial court denying the County's plea to the jurisdiction and render judgment dismissing Appellees' claims against Brazoria County.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.