# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0596
═══════════

CITY OF DENTON, PETITIONER

v.

RACHEL PAPER, RESPONDENT

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════════

**PER CURIAM**

The Texas Tort Claims Act generally limits a governmental unit's potential liability for premise-liability damages by classifying the user of the government's real property as a licensee rather than an invitee. TEX. CIV. PRAC. & REM. CODE § 101.022(a). This limitation does not apply, however, when the government's duty to warn involves a special defect such as an excavation or obstruction on a highway, road, or street. *Id.* § 101.022(b). The principal question in this premises-liability suit against a city is whether a depression or sunken area in a roadway, a few inches deep, constitutes an ordinary premises defect or a special defect within the meaning of the Tort Claims Act. *See id.* § 101.022(a)–(b). The distinction is significant because, as noted, the Tort Claims Act imposes a lesser duty of care on the government when the premises claim does not involve a special defect.

The court of appeals held that the sunken area in the road was a special defect because it "was in the same kind or class as an excavation or obstruction and posed an unexpected and unusual danger to ordinary users (bicyclists) of the roadway." ___ S.W.3d ___, ___ (Tex. App.—Fort Worth 2011) (mem. op.). We, however, disagree that the premises defect here is of the same class as an excavation or obstruction. We further conclude that there is no evidence that the City had actual knowledge of the dangerous condition and accordingly reverse the court of appeals' judgment and dismiss the case.

The City of Denton Waste Water Department excavated a section of Willowwood Street while installing a sewer tap. During the installation, the City erected barricades and warned of the construction. Upon completing the job, the City repacked the excavated cut-out and removed the barricades.

Rachel Paper, who lives on Willowwood, was riding her bicycle on the street about a week later. Her bike's front wheel encountered a sunken area in the roadway, and she was pitched over the handlebars, landing on her chin and breaking several teeth. The depression or hole that caused the accident was in the area where the City had installed the sewer tap.

Paper sued the City, claiming that its negligence in creating and failing to repair, or warn of, the street's dangerous condition caused her accident and injuries. The City denied her allegations and, after a discovery period, moved for summary judgment. The City argued that the street's condition was not a special defect but rather an ordinary premises defect of which Paper was aware and the City was not. The trial court, however, denied the City's traditional and no-evidence summary judgment motions, concluding that the condition was indeed a special defect, which meant

2

that the City owed Paper the same duty of care as that owed an invitee. ___ S.W.3d at ___. The City pursued an interlocutory appeal, TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), and the court of appeals affirmed the trial court's order denying summary judgment. ___ S.W.3d ___. The City then petitioned for our review, and we requested briefs on the merits. TEX. R. APP. P. 55. Although our jurisdiction over interlocutory appeals is limited, *see City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam), we have jurisdiction here because the court of appeals' decision is inconsistent with our special-defect jurisprudence, which we discuss below. *See* TEX. GOV'T CODE §§ 22.225(b)–(c), 22.001(a)(2).

The Tort Claims Act generally limits the duty of a governmental unit regarding a premises defect to the duty owed to a licensee on private property. TEX. CIV. PRAC. & REM. CODE § 101.022(a). When the premises-liability claim involves a special defect, however, the government's duty is not so limited. *See id*. § 101.022(b) (imposing invitee duty for special defects). The Tort Claims Act does not define the term "special defects" except to state that they include "excavations or obstructions on highways, roads, or streets." *Id*. We have construed special defects to include other defects of the same kind or class as the two expressly mentioned in the statute. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). Whether a premises defect is special or ordinary is usually a question of law. *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) (per curiam).

After her accident, one of Paper's friends photographed the accident scene and made a rough estimate of the deepest part of the sunken area by placing a mechanical pencil in the hole. The friend subsequently testified at his deposition that the depth of the area in question was "a few inches, a

3

couple of inches" or "almost a pencil length deep." No opinion was given as to the width of the sunken area. As the appeal concerns a motion for summary judgment, we examine the evidence in the light most favorable to the nonmovant. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1995). We assume then that the depth of the sunken area varied from two inches to a few inches more at its deepest point. The court of appeals noted from photographs in the record that the "deepest part of the hole" was "located several feet into the right lane from the shoulder" and that "Paper could not have navigated around the sunken area . . . without crossing into the oncoming lane of traffic." ___ S.W.3d at ___. While the photographs confirm that the hole was near the center of the right lane, they also indicate, contrary to the court's observation, that ample room existed for a bicycle to navigate around this hole without having to enter the opposing traffic lane.

In concluding that the accident involved a special defect, the court of appeals reasoned that the sunken area was "not analogous to a pothole encountered in the ordinary course of events" because it resulted from "the City's cutting a hole in the street." ___ S.W.3d at ___. This reasoning suggests that a pothole similar to the condition here would not be a special defect but that the same hole caused by a governmental unit's ineffective repair would be. Liability for a premises defect under the Tort Claims Act, however, "is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premise and special defects . . . ." *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995) (citing TEX. CIV. PRAC. & REM. CODE § 101.022). A condition's quality as a special defect thus bears not so much upon the government's role in its creation as it does on the nature of the condition itself. The circumstances surrounding the governmental unit's involvement in the creation of a premises

4

defect may be relevant to the issue of the government's knowledge of the defect, but will not serve to transform an otherwise ordinary premises defect into a special one. The court of appeals suggested distinction thus finds no support in the Act.

Instead, as we have said, "the central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction." *York*, 284 S.W.3d at 847 (citing *Cnty. of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)). In determining whether a particular condition is like an excavation or obstruction and therefore a special defect, we have mentioned several helpful characteristics, such as: (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger. *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (citing *York*, 327 S.W.3d at 847).

We have held, however, that variations in public roadways of a few inches are not the same as the excavations or obstructions mentioned in the Act. *See, e.g., Reed*, 258 S.W.3d at 622 (holding that a two- to three-inch difference in elevation between traffic lanes was not a special defect); *City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (per curiam) (holding that a worn or depressed area of a sidewalk approximately three feet by six feet in size with a depth of three inches was not a special defect). Similarly, the sunken area or pot hole here, ranging from two inches to a few inches more at its deepest point and located in the center of one lane of traffic is not the excavation or obstruction contemplated by the statute. The pot-hole-like condition here is nothing like the special defect found to exist in *County of Harris v. Eaton*.

5

*Eaton* involved an abnormally large hole in the road. This hole varied from six to ten inches in depth and was four- to nine-feet wide, extending over ninety percent of the width of the highway. *Eaton*, 573 S.W.2d at 178. Indeed, we commented that the condition "reached the proportions of a ditch across the highway." *Id.* at 179. We further observed that "one could not stay on the pavement and miss it," implicating another special-defect consideration—the condition unexpectedly and physically impaired the vehicle's ability to travel on the roadway. *Id.* Upon encountering the "ditch" in *Eaton*, the vehicle flipped coming to rest on its roof. *Id.* at 178.

Unlike the roadway's condition in *Eaton*, the sunken area here did not physically impair Paper's ability to travel. *See State v. Rodriguez*, 985 S.W.2d 83, 86 (Tex. 1999) (per curiam) (concluding that "alleged design flaws did not unexpectedly and physically impair a vehicle's ability to travel on the roadway in the same way as a ditch in the road or a ten-inch drop along the shoulder"). Rather, the photographs indicate that the sunken area could have been avoided without leaving the roadway or entering the opposing lane. Paper herself admits that she was not looking at the road immediately ahead of her at the time of the accident but instead was focused on a stop sign at the end of the street.

"The class of special defects contemplated by the statute is narrow." *Hayes*, 327 S.W.3d at 116. It does not include common potholes or similar depressions in the roadway. *See, e.g., Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 46 (Tex. App.–Tyler 1995, writ denied) (observing that special defects do not include "every pothole or bump encountered on a public highway in Texas capable of upsetting a cyclist"). Such irregularities in the roadway unfortunately are to be expected. Typically, they will not present an unusual danger to the traveler.

6

Although this is not a special defects case, Paper also contends that the City is liable here for an ordinary premises defect. The Tort Claims Act provides that, in an ordinary premises liability claim, the governmental unit owes only the duty "that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE § 101.022(a). Under Texas law, a licensor of real property owes a duty not to injure the licensee by willful or wanton acts or omissions or gross negligence. *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). When the governmental unit has actual knowledge of a dangerous condition and the licensee does not, the government must either warn the licensee or make the condition safe. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974).

Paper contends that the City knew about the hole on her street because the City created the condition when it failed to make adequate repairs after installing the sewer tap. The City, on the other hand, argues that it completed repairs to the street a week before Paper's accident and that the construction area was level with the street at the time. The City attached to its summary judgment motion the affidavit of a Field Supervisor in the Wastewater Department who had personal knowledge of the project. He averred that the sewer tap was installed and the street cut out was packed to street level with back fill and flex base to create a hard road surface on March 22. The work crew had to return the next day, however, because the sewer line sank slightly after pack down. The Field Supervisor avers that the sewer line was raised and the street cut out repacked again on March 23. Finally, he swears that when his crew left the project that day, "the area of construction was level with the street and was not hazardous." The City provided additional affidavits to demonstrate that it had not received any complaints about the project or the street repair between the

project's completion on March 23 and Paper's accident a week later on April 1. *See Univ. Of Tex-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam) (observing "that courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger represented by the condition").

To prove the actual-knowledge element of a viable premises-defect claim, the licensee must show that at the time of the incident, the landowner knew about the dangerous condition. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–15 (Tex. 2008) (per curiam). The City arguably knew that the repaired area of the street might sink again but "the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *Reyes*, 335 S.W.3d at 608 (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam)). "Awareness of a potential problem is not actual knowledge of an existing danger." *Reyes*, 335 S.W.3d at 609.

Here, Paper presented no evidence that the City actually knew a dangerous condition existed after completion of its work on Paper's street the week before her accident. She assumes that the City left the hole on her street after installing the sewer tap or was otherwise aware of the dangerous condition that subsequently developed, but she provides nothing to contradict the City's summary judgment evidence. Because Paper has no evidence that the City knew about this hazard before her accident, it was error to deny the City's motion for summary judgment.

Accordingly, we grant the petition for review, and without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and dismiss the case.

8

Opinion delivered:  August 17, 2012