# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0745

═══════════

JOHN SAMPSON, PETITIONER,

v.

THE UNIVERSITY OF TEXAS AT AUSTIN, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE LEHRMANN, joined by JUSTICE JOHNSON, JUSTICE BOYD, and JUSTICE DEVINE, dissenting.

While walking to his office on the UT campus, John Sampson tripped over an extension cord that had been strung across a walkway between two retaining walls without being secured. UT asserted sovereign immunity from the resulting negligence claim. In evaluating whether the Texas Tort Claims Act waived UT's immunity, the Court first concludes that Sampson's claim is based on a premises defect, not a condition or use of tangible personal property. I agree with the standard the Court announces to delineate these claims; specifically, that the distinction "is whether it was the contemporaneous, affirmative action or service (use) or the state of being (condition) of the tangible property itself that allegedly caused the injury, or whether it was a condition created on the real property by the tangible personal property (a premises defect)." *Ante* at ___. I also agree with the Court's application of that standard to hold that Sampson's negligence

claim sounds in premises liability and that waiver of UT's sovereign immunity therefore requires proof that UT had actual knowledge of an unreasonable risk of harm. *Id.* at ___.

However, I disagree with the Court's evidentiary analysis of the actual-knowledge element of Sampson's claim. To that end, the Court concludes that some evidence supports the assertion that UT placed the cord, but nevertheless holds that no evidence supports a finding that UT had actual knowledge of an unreasonably dangerous condition. I cannot reconcile those two holdings. I would hold that the unsecured extension cord strung across the walkway at shin height was an unreasonable risk of harm, that a genuine issue of material fact exists as to UT's actual knowledge of that risk, and that the trial court therefore properly denied UT's plea to the jurisdiction. Accordingly, I respectfully dissent.

The standard of review plays a significant role in this case. As the Court recognizes, in reviewing UT's plea to the jurisdiction, we must consider all evidence favorable to Sampson as true, indulging every reasonable inference and resolving any doubts in his favor. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). To overcome the plea, which implicates the merits of his claim, Sampson need only present evidence sufficient to raise a fact issue. *Id.* I believe Sampson met that burden.

At the time of the incident, which occurred during a tailgate party hosted by UT Law School, the extension cord at issue was being used to provide electricity to lights that had been strung through the trees on the school's lawn. Ashlie Murray, a UT employee who worked on the event, testified that on either the day of the event or the day before, she saw two UT employees from the Electric Shop walking the site and discussing the event set-up with George Bates, an employee of a private company that assisted with the set-up. A work order and cost report verify

that UT "provide[d] electrical" for the event. The work order supports Bates's testimony that he understood UT would take care of running the cords from the outlet to the area where the lights were plugged in. Further, it is standard procedure at these events for UT to run power from the outlet box to where electricity is needed.

The evidence also shows that UT employees inspected the set-up on the day of the event. The event schedule stated that "Rudy from maintenance" would arrive in the afternoon to make sure the lights were working. Murray and UT event planner Natzyeli Leugers testified that on the day of the event, two UT Electric Shop employees came to the site to check that the electricity was working as needed and that "everything was fine." After Sampson reported the incident, Susan Farias from UT's human resources department contacted Leugers to inquire about who laid the cords, and Leugers confirmed that "everything was double-checked by a UT Technical Crew Leader in the Electric shop . . . before the event started."

As the Court recognizes, the evidence creates a fact issue as to whether UT employees placed the extension cord that connected the outlet box to the tree lights on the other side of the walkway Sampson was traversing when he fell. *Ante* at ____. The Court goes on to state that "the critical inquiry here is not who initially placed the cord, but whether or not UT had actual knowledge of the dangerous condition created by the cord's position at the time of Sampson's fall, regardless of who laid it." *Id.* at ___. But I am hard-pressed to understand how UT could place the extension cord without securing it, yet lack actual knowledge of the unreasonably dangerous condition created by the unsecured cord crossing the walkway at shin height. Sampson testified that the cord "was not secured by tape or held on by a brick or other -- was not taped to the wall. It was not taped on the ground. It was just lying -- coming down at an angle . . . and then across

3

and then back -- back up on the other side and then continuing on." Bates testified that loose cords are "a tripping hazard" and that his company therefore "always duct-taped any extension cords down to the ground or to the wall."

The Court cites *City of Denton v. Paper*, 376 S.W.3d 762 (Tex. 2012), and *City of Dallas v. Thompson*, 210 S.W.3d 601 (Tex. 2006), to support its evidentiary conclusions about UT's actual knowledge. Our holdings in those cases that the cities lacked actual knowledge were premised on the proposition that "the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *Id.* at 603; *see also Paper*, 376 S.W.3d at 767 ("Awareness of a potential problem is not actual knowledge of an existing danger." (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010))). I find the Court's reliance on these distinguishable cases misplaced.

In *Paper*, the City excavated a section of the street to install a sewer tap and then repaired the street. 376 S.W.3d at 764. A week later, a cyclist was injured by a depression in the road. *Id.* A City employee testified that when the crew completed the project, the construction area was level with the street. *Id.* at 767. Further, while the "City arguably knew that the repaired area of the street might sink again," no evidence indicated that the City actually knew of subsequent settling or sinking. *Id.* In *Thompson*, in which the plaintiff tripped over a protruding coverplate in an airport lobby, we similarly held that "the fact that the coverplate could loosen and protrude over time" did not support actual knowledge of a protrusion at the time of the accident. 210 S.W.3d at 602–03. We also held that the fact that City employees had been in the area of the coverplate in the hours before the fall and "probably had walked over it" did not support actual knowledge

4

"without evidence showing how long the alleged protrusion had existed." *Id.* at 603. In other words, the City lacked actual knowledge because it knew only that the coverplate might become loose and protrude, not that it in fact was loose and protruding when the plaintiff was injured. *Id.* at 603–04.

Unlike the road depression in *Paper* and the protruding coverplate in *Thompson*, the dangerous condition here did not develop over time or result from "ordinary wear and tear." *Id.* at 603. It existed as soon as the cord was placed at shin level instead of being affixed or secured; no further movement or action was necessary to create a tripping hazard.[1] And some evidence supports the conclusion that UT employees placed the cord and inspected the entire set-up before the event. This contrasts starkly with *Thompson*, in which City employees were merely "in the vicinity of" the dangerous condition. *Id.* And in contrast to the evidence in *Paper* that no unreasonably dangerous condition existed when the city completed its work, 376 S.W.3d at 767, the record here contains no testimony or other evidence that the cord was initially positioned in a manner that differed from Sampson's description.

Finally, the Court summarily discounts "the fact that an extension cord can be taped down and that alternative methods of stringing were discussed," holding that this does not "amount to actual knowledge that the cord's position at the time of the accident created a dangerous condition." *Ante* at ___. But this evidence cannot be considered in a vacuum. Viewing the evidentiary inferences in Sampson's favor, as we must, compels the conclusion that a fact issue

---

[1] In *University of Texas–Pan American v. Aguilar*, we held that no evidence demonstrated the university's actual knowledge that a water hose lying across a sidewalk was an unreasonably dangerous condition. 251 S.W.3d 511, 512, 514 (Tex. 2008). Unlike the hose in *Aguilar*, which was apparently laid flat across the sidewalk, *id.* at 512, the extension cord in this case was strung in such a way that it ran from an elevated surface down a retaining wall to the ground, across the sidewalk, and up another retaining wall to an elevated surface. In my view, this creates an obvious hazard if the cord is not secured.

exists as to whether UT employees placed the cord in a manner that constituted an unreasonably dangerous condition and therefore had actual knowledge of the condition. I would hold that Sampson is entitled to have that issue resolved by the fact finder and that the trial court properly denied UT's plea to the jurisdiction. Accordingly, I must respectfully dissent.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 10, 2016