**REVERSE, RENDER, and DISMISS; and Opinion Filed July 8, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00753-CV**

**CITY OF RICHARDSON, TEXAS, Appellant**
**V.**
**VAL PHELPS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-01642-B**

# MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen III
Opinion by Justice Brown

Val Phelps sued the City of Richardson, Texas, after he was injured while riding his bicycle in a designated bike lane. Phelps alleged there was a hazardous condition in the bike lane that was either a premises defect or a special defect. The City filed a plea to the jurisdiction, asserting that governmental immunity barred Phelps's claims. In this interlocutory appeal, the City challenges the trial court's denial of its plea. We conclude the City established as a matter of law that its immunity was not waived. Accordingly, we reverse and render judgment dismissing the case for lack of subject matter jurisdiction.

## BACKGROUND

On the morning of October 23, 2016, Phelps was riding his bicycle in the City with a group of about eighteen cyclists in a designated bike lane on Owens Boulevard. Pictures show the bike

lane was positioned in between a lane to the right for parked cars and a lane to the left for moving vehicles. Phelps alleged there was a "lip or 'heave'" in the bike lane which ran in the direction in which the cyclists were traveling. As a result, the left side of the bike lane was higher than the right. Phelps had not been on the road before and was unaware of the lip. He moved from right to left to avoid a parked car and was "instantly thrown to the ground and injured." Phelps does not remember the crash or the few minutes leading up to it. Phelps alleged the City was liable under two alternative theories: (1) the condition of the bike lane was a premises defect, or (2) the condition constituted a special defect. Phelps sought to recover for property damage among other things.

The City filed a plea to the jurisdiction. The City asserted the alleged defect was not a special defect and asserted it did not have actual knowledge of the condition, which is required for a premises defect. In support of its plea, the City submitted evidence, including Phelps's deposition and testimony from City employees. In response, Phelps acknowledged that had the defect been on a normal street, it would not be a special defect. He argued that because the defect was in a bike lane, it was a special defect because it created an unexpected and unusual condition for cyclists. He also asserted the City had actual knowledge of the premises defect based on previous repairs it made to the area and because of a previous complaint made by a cyclist named Mark Ramsey. The trial court denied the City's plea to the jurisdiction.[1] The City raises four issues challenging the trial court's ruling.

## GOVERNMENTAL IMMUNITY

Governmental entities are immune from suit absent legislative consent. *Tarrant Cty. v. Bonner*, No. 18-0431, 2019 WL 2256509, at *6 (Tex. May 24, 2019). If a governmental unit has

---

[1] The City initially filed a document titled, "Defendant's Initial Plea to the Jurisdiction and Tex. R. Civ. P. Rule 69 Pleading" in which it raised its argument regarding the lack of a special defect. The City later filed a motion titled, "Defendant's Dispositive Motion and Tex. R. Civ. P. Rule 69 Supplemental Pleading." This second motion addressed both the special defect and the premises defect and made clear it was intended as a dilatory plea seeking dismissal of the case for lack of subject matter jurisdiction. The order from which the City appeals denied its "Dispositive Motion." We refer to the City's motion as a plea to the jurisdiction.

immunity from suit, a trial court lacks subject matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). The City's immunity from suit for tort claims is waived to the extent the tort claims act creates liability. TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a). The Act provides a limited waiver of immunity for claims arising from a condition or use of real property. *Id.* § 101.021(2); *Zaidi v. N. Tex. Tollway Auth.*, No. 05-17-01056-CV, 2018 WL 6426798, at *2 (Tex. App.—Dallas Dec. 6, 2018, no pet.) (mem. op.). The Act recognizes potential liability for two types of dangerous conditions of real property, premises defects and special defects. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022; *Chambers v. Tex. Dep't of Transp.*, No. 05-11-00519-CV, 2012 WL 1744706, at *3 (Tex. App.—Dallas May 16, 2012, pet. denied) (mem. op.). The Act imposes different standards of care depending on whether the condition is a premises defect or a special defect. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022; *Zaidi*, 2018 WL 6426798, at *3. Whether a condition is a premises or special defect is a question of law. *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994); *Chambers*, 2012 WL 1744706, at *3.

A governmental unit may assert its immunity from suit through a plea to the jurisdiction which challenges the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). We review the trial court's ruling on a plea to the jurisdiction de novo. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). Here, the City's jurisdictional plea challenged the existence of jurisdictional facts with supporting evidence. In such cases, the standard of review mirrors that of a traditional summary judgment. *Alamo Heights*, 544 S.W.3d at 771. To avoid dismissal, a plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Id.* In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.*

–3–

**Special Defect**

In its first issue, the City contends the trial court erred in denying the plea to the jurisdiction regarding Phelps's special defect claim because the alleged defect was not a special defect. We agree.

If a claim arises from a special defect, the governmental unit owes the same duty to warn that a private landowner owes an invitee. *Chambers*, 2012 WL 1744706, at *4. That duty requires a premises owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of which the owner is or reasonably should be aware. *Id.* The Legislature has not defined "special defect," but likens it to conditions "such as excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). The supreme court has construed special defects to include other defects of the same kind or class as the two expressly mentioned in the statute. *See Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). In determining whether a particular condition is like an excavation or obstruction, we consider the following: (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam).

The class of special defects contemplated by the statute is narrow. *City of Denton v. Paper*, 376 S.W.3d 762, 766 (Tex. 2012) (per curiam); *Hayes*, 327 S.W.3d at 116. It does not include common potholes or similar depressions in the roadway. *Paper*, 376 S.W.3d at 766. Such irregularities in the roadway are unfortunately to be expected. *Id.* Typically they will not present an unusual danger to the traveler. *Id.* While something like a "ditch across the highway" is a

–4–

special defect, a two-inch drop in the roadway is not. *Hayes*, 327 S.W.3d at 116 (citing *Harris Cty. v. Eaton*, 573 S.W.2d 177, 178, 180 (Tex. 1978) (oval-shaped hole, varying at places from six to ten inches in depth and covering more than ninety percent of width of highway was special defect)). Variations in public roadways of a few inches are not the same as the excavations or obstructions mentioned in the Act. *Paper*, 376 S.W.3d at 765.

The evidence showed that at the time of Phelps's accident, the difference in height between the left side of the bike lane and the right side was approximately two inches. The alleged defect was at least twenty feet long; Phelps testified in his deposition that he was told he "went over 20 feet of crack." Some cyclists in Phelps's group warned of the crack. Phelps was certain he did not hear their warnings because if he had he would have done something to avoid the crack. Phelps stated that had he known of the defect, he could have easily avoided it. Phelps did not see the crack because he was riding next to and behind others.

In a case involving a motorcyclist who had an accident as he changed lanes, the supreme court held that a two-inch difference in elevation between traffic lanes on a roadway is not a special defect. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). We are not persuaded that the result should be different in this case because it involves a bicyclist in a bike lane. There was no evidence the lip presented a condition like an excavation or obstruction for cyclists. The other cyclists with Phelps avoided the defect. Moreover, Phelps himself admitted that had he known about the condition, he could easily have avoided it. A condition that can be easily avoided is not in the nature of an excavation or obstruction on the roadway. *See City of Austin v. Vykoukal*, No. 03-16-00261-CV, 2017 WL 2062259, at *4 (Tex. App.—Austin May 10, 2017, pet. denied) (mem. op.) (overgrown vegetation in bike lane was not special defect where vegetation could be avoided by cyclists without leaving lane); *Texas Dep't of Transp. v. Womac*, No. 13-11-00460-CV, 2012 WL 4854729, at *3–4 (Tex. App.—Corpus Christi–Edinburg Oct. 11, 2012, no pet.) (mem. op.)

(caved-in area spanning about one-third of bike lane not special defect). As a matter of law, the alleged defect in this case was not a special defect. The trial court erred in denying the City's plea to the jurisdiction as to Phelps's special defect claim. We sustain the City's first issue.

**Premises Defect**

In its third issue, the City challenges the denial of its plea to the jurisdiction regarding Phelps's premises defect claim. The City asserts it retains immunity because it lacked actual knowledge of the alleged defect. Its position is that it knew of and repaired the vertical separation in the roadway prior to Phelps's accident and was unaware the condition had returned.

Under the tort claims act, when a claim arises from a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). The duty owed to a licensee requires that a landowner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016). Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of a duty owed to him: (1) the condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's failure was a proximate cause of injury to the licensee. *Id.* To prove actual knowledge, a licensee must show that the owner actually knew of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition could develop over time. *Id.* at 392. Courts generally consider whether the premises

owner has received reports of prior injuries or reports of the potential danger presented by the condition. *Reed*, 258 S.W.3d at 622.

To show it lacked actual knowledge of the condition of the bike lane at the time Phelps was injured, the City relied on the deposition and affidavit testimony of several of its employees. Mark Titus, the City's transportation engineering manager, testified that to the best of his knowledge, no one in his department drove the road regularly. Eric Robison, the City's street maintenance superintendent, testified that he is the person responsible for street repairs and maintenance. Unless matters are reported to him, the City has no knowledge it can act on. Robison had no knowledge of the defect made this basis of this lawsuit prior to the incident. Robison reviewed the City's records and they reflect that on October 23, 2016, any defects in the area had been repaired sufficiently. According to Dave Carter, assistant director of development services and transportation, if someone with the City had seen this problem before the accident, they would have reported it to streets and had it fixed.

The City had been aware in 2014 of a defect in the same area of the bike lane, but the City's evidence showed it repaired that defect prior to Phelps's crash. The City did not have a work order for the repair and could not pinpoint when it was done. Carter said it was "[s]ometime after the bicycle lane was installed, late August or after in 2014." The City repaired the hazard with an asphalt patch. Robison believed the patch was older than the shift because the patch "coloration" did not indicate a new patch. Carter indicated that following the complaint from cyclist Ramsey, "streets went out and did some asphalt work." Carter believed the work was to level vertical separation. He stated that when they put the asphalt in, it would have been level. The pavement had dropped since that repair was done. According to Carter, defects in roadways can happen very gradually or overnight.

Phelps argues there is ample evidence the City had actual knowledge. In his response to the City's jurisdictional plea, he asserted that a "prior repair showed the City was aware of the hazard where the incident occurred at least 2 years prior." Phelps relied on a photo taken the day of the accident that shows a "tar patch" done after the bike lane was created. He also relied on the testimony of City employees Carter and Titus showing their awareness and repair of defects at an earlier time. But evidence the City had repaired the bike lane prior to Phelps's accident does not show the City's actual knowledge of the condition of the lane when Phelps crashed in October 2016. It shows merely the City's knowledge of the possibility that a dangerous condition could develop over time, which is insufficient. *See Sampson*, 500 S.W.3d at 392.

Phelps also contends the City had actual knowledge of the condition based on the previous complaint from Ramsey. Over two years before Phelps's accident, on July 16, 2014, Ramsey e-mailed Carter about the bike lane on Owens Boulevard and attached a photograph. Ramsey told Carter he appreciated the attentiveness to his concerns about the road surface on the bike lane and had noticed that crews applied asphalt to some cracks. Ramsey said however that the "biggest hazard" had not yet been worked on. He explained that the "right half of the two sections of concrete has risen up above the left half, creating a gap large enough to trap a bicycle tire."

Phelps does not argue that the City failed to repair the defect that was the subject of Ramsey's e-mail. Phelps contends that when the City made that repair, the defect that caused him to crash existed and the City would have certainly seen it. As proof, Phelps relies on a 2018 affidavit from Ramsey in which he provided additional information about the 2014 condition of the bike lane. In his affidavit, Ramsey stated there were two defects in the bike lane in 2014—a large gap between sections of concrete and a height difference between two sections of pavement. He said the gap defect was repaired in the fall of 2014, but the height defect was not. Ramsey further stated in the affidavit that the photo he sent the City in the summer of 2014 depicted the

–8–

gap defect, but did not show the area where the height difference defect was. Nevertheless, he said it was his intent to indicate cycling safety hazards along the whole 2300 block of Owens, not just the area in the photo. Ramsey stated that when the City repaired the gap defect, it "certainly would have been aware of the height defect that was just a few yards" away.

The Ramsey evidence does not raise a fact issue on actual knowledge. Ramsey's e-mail informed the City in July 2014 about one defect. The City repaired that defect before October 23, 2016. Phelps's reliance on Ramsey's later affidavit is unavailing. That Ramsey intended to inform the City of a different "height difference defect" not mentioned in his e-mail or depicted in the photo he sent is not relevant to the issue of actual knowledge. Nor is evidence that the City "would have been" aware of the height difference defect because it was a few yards away from where it made other repairs. Actual knowledge, rather than constructive knowledge, is required. *Zaidi*, 2018 WL 6426798, at *3. At most, Phelps's evidence shows constructive knowledge. Viewing the evidence in the light most favorable to Phelps, he has not raised a fact issue on the City's actual knowledge of the dangerous condition. The City established it was immune from Phelps's premises liability claim and the trial court erred in ruling otherwise. We sustain the City's third issue.

We need not address the City's two remaining issues. In issue two, the City argues the trial court erred in denying its plea to the jurisdiction regarding Phelps's claim for property damage. In his appellate brief, Phelps concedes that immunity was not waived for his property damage claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) (governmental unit liable for property damage arising from operation or use of motor-driven vehicle). In issue four, the City contends the trial court erred in denying its plea to the jurisdiction regarding its premises liability claim because open and obvious conditions are not actionable. We have resolved Phelps's premises liability claim on other grounds.

–9–

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Phelps's claims for lack of subject matter jurisdiction.


/Ada Brown/
ADA BROWN
JUSTICE


180753F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF RICHARDSON, TEXAS, Appellant

No. 05-18-00753-CV     V.

VAL PHELPS, Appellee

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-17-01642-B.
Opinion delivered by Justice Brown, Justices Schenck and Pedersen III participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant's plea to the jurisdiction is **REVERSED** and judgment is **RENDERED** that:

The case is **DISMISSED** for lack of subject matter jurisdiction.

It is **ORDERED** that appellant CITY OF RICHARDSON, TEXAS recover its costs of this appeal from appellee VAL PHELPS.

Judgment entered this 8th day of July 2019.