

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00453-CV

**CITY OF LAREDO**,
Appellant

v.

Fausto **TORRES**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2021-CVF-000333-D1
Honorable Joe Lopez, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 4, 2023

REVERSED AND RENDERED

Appellant the City of Laredo appeals the trial court's denial of its plea to the jurisdiction. The City argues the trial court did not have jurisdiction over appellee Fausto Torres's claims because, among other things, Torres failed to comply with notice of claim requirements, it did not own the property where Torres's injury occurred, and it had no actual knowledge of the premises defect. Because we conclude the City had no actual knowledge of the premises defect, we reverse the trial court's denial of the plea to the jurisdiction and render judgment for the City dismissing this case for lack of jurisdiction.

## BACKGROUND

On February 18, 2019, a light pole in front of the Webb County Courthouse fell on Torres, while he was installing bleachers for a parade. Torres filed suit on February 18, 2021 against the City, his employer Laredo Independent School District (LISD), and American Electric Power for negligence and gross negligence seeking damages for his injuries. Four months later, Torres amended his petition to add Webb County as a defendant, and Webb County filed a plea to the jurisdiction, which the trial court later granted. Torres also nonsuited his lawsuit against LISD and American Electric Power. By April 2022, the City filed a plea to the jurisdiction. After a hearing, the trial court denied the City's plea to the jurisdiction on July 22, 2022. This appeal followed.

## TORT CLAIMS ACT NOTICE OF CLAIM REQUIREMENTS

The City argues the trial court erred by denying its plea to the jurisdiction because Torres's notice of claim did not satisfy the city charter requirements and therefore did not comply with notice requirements in Civil Practice and Remedies Code section 101.101(b). TEX. CIV. PRAC. & REM. CODE § 101.101(b).

### A. Law

Notice of a claim "is a prerequisite to subject-matter jurisdiction and, thus, a question of law we review de novo." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019) (footnote omitted). Section 101.101(a) provides a governmental entity must "receive notice of a claim against it" within six months of an alleged injury. TEX. CIV. PRAC. & REM. CODE § 101.101(a); *see Worsdale*, 578 S.W.3d at 62. The notice must describe the incident, its time and place, and the damage or injury claimed. TEX. CIV. PRAC. & REM. CODE § 101.101(a); *Worsdale*, 578 S.W.3d at 62. City charters, like the one in this case, sometimes include additional or separate notice requirements a claimant must fulfill in addition to section 101.101(a) requirements. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(b); *Worsdale*, 578 S.W.3d at 62.

Notice requirements in section 101.101(a) and (b) "do not apply if the governmental unit has actual notice . . . that the claimant has received some injury." TEX. CIV. PRAC. & REM. CODE § 101.101(c). Actual notice under section 101.101(c) requires the governmental unit to have knowledge of (1) the injury, (2) "the governmental unit's alleged fault producing or contributing to the . . . injury", and (3) "the identity of the parties involved." *Worsdale*, 578 S.W.3d at 62, 63, 68–77 (quoting *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) and reaffirming *Cathey* as "settled law . . . correctly decided in the first instance."); *see also id.* at 70 ("Though not a definition in a strict sense, 'actual notice' in subsection (c) essentially replicates subsection (a)'s 'notice of a claim' requirement because subsection (c) tethers actual notice to injuries suffered by a 'claimant.'"); *see, e.g.*, *Reyes v. Jefferson County*, 601 S.W.3d 795, 798 (Tex. 2020) (per curiam).

Actual notice is not "*potential* notice" and does not exist "whenever a governmental unit has notice of any . . . injury" because "[m]any governmental units may, in the ordinary course of events, have knowledge of . . . injuries . . . but no warning—'notice'—that a lawsuit might eventually be filed alleging the governmental unit was responsible." *Worsdale*, 578 S.W.3d at 69, 72, 75–76 (rejecting "plain and simple" standard construing section 101.101(c) as "notice of any . . . injury" as superficial because it would render notice requirements in sections (a) and (b) of 101.101 "a dead letter"). In other words, knowledge an injury has occurred, standing alone, is insufficient for actual notice. *See id.* at 63–64 ("It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault." (quoting *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347–48 (Tex. 2004) (internal quotation marks omitted)).

The governmental unit must be "subjectively aware that it may be responsible for . . . injury . . . in the manner ultimately alleged by the claimant," regardless of whether the

governmental unit "believed it was liable or not." *Id.* at 67, 77; *see also id.* at 70–71 (providing actual notice requires "not only knowledge of some harm but also information sufficient to (1) identify the particular loss ultimately alleged and (2) alert the governmental unit to something impending—for any number of reasons, but especially to allow preparations to be made"). Subjective awareness may be proved by circumstantial evidence. *See id.* at 66.

The existence of actual notice "albeit a question of law, always turns on the particular facts of a case." *Id.* at 76. Actual notice may be determined as a matter of law when the facts are undisputed. *Id.* at 77. "When actual-notice evidence is disputed, a fact question arises." *Id.* at 66. "When a jurisdictional fact issue is intertwined with the merits, the court cannot grant the plea, but when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations that are supported by sufficient evidence." *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder." *Freeman v. City of Waxahachie*, 636 S.W.3d 306, 309 (Tex. App.—Waco 2021, pet. denied); *see also City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022).

**B. Analysis**

In support of its plea to the jurisdiction, the City attached its charter along with Torres's notice of claim and a letter from Texas Mutual accompanying the notice of claim. The City Charter section 1.07 provides:

> The City of Laredo shall not be responsible on account of any claim for damages to any person or property unless the person making such complaint or claiming such damage shall, within 180 days after the time at which it is claimed such damages were inflicted upon such person or property, file with the City Secretary, a true statement under oath, as to the nature and character of such damages or injuries, the extent of the same, and the place where same happened, the circumstances under which happened, the conditions causing same, with a detailed statement of each item of damages and the amount thereof, and if it be for

personal injuries, giving a list of the witnesses, if any known to affiants, who witnessed such accident.

Torres's March 18, 2019 "Notice of Claim Against the City of Laredo" for "Personal Injury – Property Damage" was provided by "Texas Mutual Insurance Company as subrogee of Fausto Torres." The notice explains Torres sustained injuries to his chest, back, and toe and identifies the incident's time and location as Victoria and Flores Streets at approximately 9 A.M. on February 18, 2019. In response to "How" the incident occurred, the notice of claim provides: "Torres, an employee of [LISD] was setting up bleachers for a public event on 2-18-19. A lamp post fell on Fausto Torres causing his injuries." In a box designated for claim details, the notice of claim provides: "Texas Mutual Insurance is the workers' compensation carrier for LISD paying benefits to and on behalf of Fausto Torres for his injuries because of the lamp post which fell on him." Texas Mutual Insurance also included a letter addressed to the City Secretary's Office regarding "Notice of workers' compensation lien and subrogation claim" stating the insurance company "is the workers' compensation carrier for Fausto Torres related to a February 18, 2019, accident on Victoria Street in Laredo, Texas. Fausto Torres was setting up bleachers for an event taking place in Laredo, Texas. A green city lamp post fell on Fausto Torres causing his subsequent injuries." The letter added "[b]ecause of the accident, to date we have paid $860.69 in workers' compensation benefits to and on behalf of Fausto Torres."

In opposition to the City's plea, Torres included, as evidence, a March 19, 2019 incident report generated by the City's Risk Department. The report—which was created the day after the City received Torres's notice of claim—identifies the incident as damage to "Light Lamp outside Webb County Offices" at the corner of Convent Street and Victoria Street. The report identifies a citizen involved in the incident as "LISD Employee (unknown name)." The report states the "Details of the Incident" as:

On Tues., 02-19-19, Traffic Supervisor Pedro Paredes reported that on Monday, 02-18-19 LISD personnel were installing bleachers for the WBCA parade in front of the Webb County Building, [a] traffic technician received a call that a green lamp pole light had fallen down by itself and had hit one of the workers installing the bleachers. Webb County representatives stated that the green lamp light belongs to the City and not to the county: Since no one wanted to take responsibility for, the green pole: even though it was on the County's side, the City's traffic department responded and removed the pole, I obtained video of the accident from the County but it's unclear as to how the green lamp pole fell. NOTE: Unknown what type of injuries were sustained by the LISD employee.[1]

Torres also included the deposition transcript of Robert F. Peña—Engineering Superintendent with the City's Traffic Safety Department. Peña confirmed the report details and stated he was "[u]naware that there was . . . harm to Mr. Torres." Counsel for Torres specifically asked Peña if he was aware of any other reports or any additional investigation to determine the status of the injured person. Peña responded, "I'm unaware of—of any of that."

The record also includes a Laredo Police Department report and Laredo Fire Department patient care record produced by the City in discovery. The police report identifies Torres as an LISD maintenance employee, includes his contact information and a narrative stating "[o]n 2-18-19, police responded to an injured person report call by the 1100 block of Victoria St." The patient care record also identifies Torres and includes the following narrative:

Responded to the intersection of Victoria/Flores for a 39 year old male with back pain due to an object that fell on him. On arrival, patient was found sitting alert and oriented. Patient was assessed and vitals were taken. Patient had a chief complaint of back pain and chest pain. Patient denied loss of consciousness.

Here, Torres's notice of claim and the letter accompanying it identified Torres and his back and chest injuries, and plainly stated "[a] green city lamp post fell on Fausto Torres."[2] *See Worsdale*, 578 S.W.3d at 62; *Cathey*, 900 S.W.2d at 341. However, Peña testified he was unaware

---

[1] The record also includes four photos accompanying the incident report of the fallen lamp and surrounding area.

[2] The police report and the patient care record also identified Torres, and the patient care record identified Torres's injuries.

of Torres's injuries and the Risk Department's incident report did not identify Torres as the injured claimant. *See Worsdale*, 578 S.W.3d at 62; *Cathey*, 900 S.W.2d at 341. Taking as true all evidence favorable to Torres, including the notice of claim, the accompanying letter, the Risk Department incident report, and the Fire Department's patient care record, indulging every reasonable inference in Torres's favor, and resolving any doubts in his favor, the evidence shows there exists a fact issue about actual notice of the claim.

We therefore cannot conclude the trial court erred by denying the City's plea to the jurisdiction based on Torres's failure to provide notice of his claim consistent with the charter.

### GOVERNMENTAL IMMUNITY

The City argues the trial court erred by denying its plea to the jurisdiction because the undisputed evidence demonstrates it (1) did not own, control, or have daily operational authority of the property where the light pole was located before it fell; and (2) did not have actual knowledge the light pole posed a dangerous condition prior to falling on Torres as required in a premises defect case.

### A. Standard of Review

"Governmental units are immune from suit unless immunity is waived by state law." *Maspero*, 640 S.W.3d at 528. The party suing the governmental unit bears the burden to affirmatively show waiver of immunity. *Id.* "Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo." *Id.* "[T]o prevail on a claim of immunity, the governmental defendant may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, the existence of those very jurisdictional facts, or both." *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 n.8 (Tex. 2022) (internal quotation marks omitted). "When the pleadings are challenged, we review whether the alleged facts, if true, affirmatively demonstrate jurisdiction; because we construe

pleadings liberally in favor of the pleader, we will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). When a plea challenges the existence of jurisdictional facts, as the City does here, we must move beyond the pleadings and consider evidence. *See Maspero*, 640 S.W.3d at 529; *Riojas*, 640 S.W.3d at 536 n.8. "The analysis then mirrors that of a traditional summary judgment." *Riojas*, 640 S.W.3d at 536 n.8.

"To that end, in evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Maspero*, 640 S.W.3d at 528–29. "When the pleadings and evidence generate a fact question on jurisdiction, dismissal on a plea to the jurisdiction is improper." *Id.* at 529 (internal quotation marks omitted). "However, if the evidence is undisputed or fails to raise a fact question, the plea must be granted." *Id.* (internal quotation marks omitted).

## B. Knowledge of the Defect

Assuming, without deciding, a fact issue exists regarding ownership and control, the City argues the trial court erred because there is no evidence it had actual knowledge the light pole created a dangerous condition. Specifically, it contends the Texas Tort Claims Act applies an actual knowledge standard to premises defect cases and treats claimants as licensees; therefore, Torres was required to prove the City had actual knowledge because he filed a premises defect claim. Torres contends the trial court properly decided the light pole posed a special defect, and the City should have known of the danger posed by the light pole.

### 1. Premises Defect Versus Special Defect

To determine whether the trial court erred in denying the plea to the jurisdiction, we must first address the difference in the notice standard between a premises defect and a special defect. "When a claim arises from a premises defect under the Tort Claims Act, 'the governmental unit

owes to the claimant only the duty that a private person owes to a licensee on private property.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016) (quoting TEX. CIV. PRAC. & REM. CODE § 101.022(a) (providing same and explaining standard does not apply if claimant pays for use of premises)). "The duty owed to a licensee requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). "Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of duty owed to him":

> (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee.[3]

*Id.* (quoting *Payne*, 838 S.W.2d at 237) (internal quotation marks omitted).

Actual knowledge, rather than constructive or hypothetical knowledge of the dangerous condition, is required. *Id.* at 392 (quoting *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)). "Furthermore, the licensee must show that the owner actually knew of the 'dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time.'" *Id.* (alteration in original) (quoting *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam)). "Additionally, that the owner could have done more to warn the licensee is not direct evidence to show that the owner had actual knowledge of the dangerous

---

[3] Torres further contends even if the case is a premises defect case, the evidence shows the City was grossly negligent. However, even if the City were grossly negligent, gross negligence requires actual knowledge, and the City argued it did not have actual knowledge of the premises defect. *See, e.g.*, *Suarez v. City of Texas City*, 465 S.W.3d 623, 633–34 (Tex. 2015). Moreover, it is undisputed Torres was not engaging in recreation at the time of the incident, making the claim subject to the recreational use statute. *See Suarez*, 465 S.W.3d at 632. *See generally* TEX. CIV. PRAC. & REM. CODE § 75.002 (providing liability for gross negligence).

condition." *Id.* "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Id.* (quoting *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam)) (internal quotation marks omitted).

Section 101.022 provides the duty owed to a licensee applied in premises defect cases "does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE § 101.022(b). Whether a condition is a premises defect or a special defect is a question of law we review de novo. *See, e.g.*, *Fraley v. Texas A&M Univ. Sys.*, 664 S.W.3d 91, 98 (Tex. 2023); *Payne*, 838 S.W.2d at 238. "Where a special defect exists, the State owes the same duty to warn as a private landowner owes to an invitee." *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam). "That duty requires the State to use ordinary care to reduce or eliminate an unreasonable risk of harm, which the State knew or reasonably should have known." *Id.* In other words, "a licensee must prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known." *Payne*, 838 S.W.2d at 237.

"The Act does not define special defect, and so, [u]nder the ejusdem generis rule, we are to construe special defect to include those defects of the same kind or class as the ones expressly mentioned—that is, excavations and obstructions on roadways." *Reyes v. City of Laredo*, 335 S.W.3d 605, 607–08 (Tex. 2010) (alteration in original) (quoting *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)) (internal quotation marks omitted); *see, e.g.*, *Fraley*, 664 S.W.3d at 98. "Factors helpful to ascertaining whether a premises condition is a special defect include the condition's size, whether the condition unexpectedly impairs a vehicle's ability to travel on the road, or whether it presents an unexpected and unusual danger to ordinary users of the roadway."

*Fraley*, 664 S.W.3d at 98; *see City of Denton v. Paper*, 376 S.W.3d 762, 765 (Tex. 2012). "The class of special defects contemplated by the statute is narrow." *Hayes*, 327 S.W.3d at 116.

"Our special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Id.* (quoting *Denton County v. Beynon*, 283 S.W.3d 329, 331–32 (Tex. 2009)); *see, e.g.*, *Reyes*, 335 S.W.3d at 607–08 (identifying special defects and things that are not special defects, with special defects including sizeable mound of gravel left on roadway and a large sign lying face down in the middle of the road; and things that were not special defects including: (1) a layer of loose gravel on roadway that does not physically block road, (2) a two- to three-inch difference in elevation between lanes, (3) a sharp turn in a road construction detour, (4) a stopped car, (5) ice on a bridge during freezing, wet weather, and (6) storm flooded-streets); *Beynon*, 283 S.W.3d at 331–32 (citing *Payne* with approval and concluding seventeen-foot floodgate arm located three feet off roadway not special defect because it did not prevent ordinary users from traveling on road as opposed to skidding off road); *Payne*, 838 S.W.2d at 238–39 n.3 (providing conditions threatening normal users of a road or near a road may be special defects even though they do not occur on the surface of a road, but "only if they pose a threat to the ordinary users of a particular roadway" and identifying as examples condition created by thick brush hiding an arroyo running alongside road with an unmarked break in the brush appearing to be an intersecting road and unmarked termination of dead-end street four feet from ditch, and rejecting as special defect improperly secured light pole near excavation site and loose wall panel at courthouse); *City of El Paso v. Chacon*, 148 S.W.3d 417, 423 (Tex. App.—El Paso 2004, pet. denied) (concluding special defect properly pled where pedestrian alleged he stepped into gaping hole on sidewalk where utility pole or traffic control device had been installed at one time and distinguishing case from cases concluding (1) sidewalk hole that was approximately three inches deep not special defect, (2) hole where concrete had cracked and crumbled away at first step of

sidewalk steps not in same class of obstructions and excavations contemplated by special defect statute, and (3) uncovered storm sewer located where pedestrian would normally walk on street without sidewalk and in absence of streetlights constituted special defect).

Here, the undisputed evidence shows at the time of Torres's injury, he was employed by LISD and was installing parade bleachers in front of the Webb County Building. He was therefore not an ordinary user following the normal course of travel on a roadway or street. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b); *Fraley*, 664 S.W.3d at 98; *Beynon*, 283 S.W.3d at 331–32. Based on this evidence, we cannot conclude the defect at issue—while unexpected and unusual— was a special defect, and we must apply the actual knowledge standard for premises defects. *See Reyes*, 335 S.W.3d at 607–08; *Hayes*, 327 S.W.3d at 116; *Payne*, 838 S.W.2d at 238–39 n.3.

### 2. Actual Knowledge of a Premises Defect

In support of its plea to the jurisdiction, the City contended it did not have actual knowledge of the light pole as a dangerous condition, pointing to evidence it never received any reports about the light pole in question. In his affidavit, engineering superintendent Peña explained:

> 4. In effectuating the responsibilities of the City's Traffic Safety Department, our department is capable of receiving, and does receive, reports of light poles which need maintenance, repair, or replacement. These reports are maintained in the City's Traffic Safety Department records within the normal course of business.
>
> 5. As part of the duties of my department, I ensure the Department is handling the maintenance of the light poles located within the City that are located in areas for which the City is responsible. However, the City is not responsible for maintaining every light pole located within the City; as some light poles are maintained by other entities.
>
> 6. One area with light poles of which the City does not maintain are located on the property adjacent to the road in front of the Webb County Justice Center, located on the northside of the 1100 block of Victoria Street, between Convent Avenue and Flores Avenue (hereinafter, the "Courthouse Poles"). The City is not responsible for maintaining the Courthouse Poles.
>
> . . .

10. Due to our lack of maintenance and control over the Courthouse Poles, we are not made aware of any potential issues or defects with the Courthouse Poles, which includes having no prior knowledge of a defective condition regarding the light poles outside of the courthouse, which includes the light pole that fell on a Laredo ISD employee on February 18, 2019 (hereinafter, the "fallen light pole").

11. With respect to the fallen light pole, we had not been informed of any defect, issue, or other circumstance which would have led us to believe that there was an unreasonable risk of harm, or a reason to inspect the fallen light pole (prior to it falling) to determine if there was any unreasonable risk of harm present. I subsequently performed a diligent search of my department's records for any prior report or notice received by the City which would have advised the City that the pole posed a danger to pedestrians on the walkway or the roadway or that the City was responsible for the maintenance or operation of the specific fallen light pole. No documents were discovered during the search. Had such a document existed, it would have been submitted to my department and contained within my department's records kept within the normal course of business.

12. The first instance in which the City was made aware there was an issue with the fallen light pole was after the pole had fallen on February 18, 2019.

During his deposition, Peña explained he was not aware of any previous incidents involving light poles falling or causing injury. He further testified the City did not maintain the fallen light pole before it fell or inspect it on a regular basis. In opposition to the plea, Torres pointed to evidence showing the City never maintained the light pole.

Here, nothing in the record shows the City had any actual knowledge the light pole was in a dangerous condition at the time of the accident. *See Sampson*, 500 S.W.3d at 391. There is no evidence the City received any reports of prior injuries or reports of the potential danger presented by the fallen light pole. *See id.* As a result, we cannot conclude the City had actual knowledge of the fallen light pole at the time of the accident, and therefore cannot conclude the City breached any duty to Torres.

Accordingly, the trial court erred in denying the City's plea to the jurisdiction.[4]

---

[4] Because we conclude the trial court erred by denying the City's plea to the jurisdiction, we do not consider the City's statute of limitations argument. *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

We reverse the trial court's July 22, 2022 order denying the City's plea to the jurisdiction, render judgment granting the City's plea to the jurisdiction, and dismiss the case for lack of jurisdiction.

Luz Elena D. Chapa, Justice