In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00281-CV
_____

CITY OF GROVES, Appellant

V.

SCOTT LOVELACE, INDIVIDUALLY,
AND AS NEXT FRIEND OF MINOR, C.L., Appellee

_____

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-203,308
_____

## MEMORANDUM OPINION

The City of Groves (a home-rule municipality located in Jefferson County, Texas) appeals from the district court's order denying its plea to the jurisdiction.[1] To resolve the issues the City raises in this appeal, we

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting interlocutory appeals from orders granting or denying pleas to jurisdiction filed by governmental units); *Wagstaff v. Groves*, 419 S.W.2d 441, 443 (Tex. Civ. App.—Beaumont 1967, writ ref'd n.r.e.) (noting the City of Groves' status as a home-rule city).

1

must decide whether the trial court erred in finding it possessed subject-matter jurisdiction over the suit the plaintiffs filed against the City to recover on tort claims under the Texas Tort Claims Act. The plaintiffs alleged that Scott Lovelace was injured when a "dead tree" on property the City did not own but in the City's right-of-way fell on Scott. In its plea, the City alleged it was immune from the plaintiffs' suit and that its immunity had not been waived because it did not have actual knowledge the tree was in an unreasonably dangerous condition before it fell. The City produced evidence supporting its claim that it did not know of the unreasonably dangerous condition of the tree before Scott's injury occurred. The City also alleged that the tree did not create a special defect under the Tort Claims Act and that the plaintiffs could not recover under the Tort Claims Act based on proof that it should have discovered the tree was rotten and in danger of falling before it fell and injured Scott.

We conclude the plaintiffs' claims are properly characterized as a premise defect claim, not a special defect claim.[2] We further conclude the

---

[2]*See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016) (explaining that for premise defect claims under the Tort Claims Act, the premises owner has a duty to "use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not").

2

plaintiffs failed to establish a genuine issue of material fact exists on the issue of whether the City had actual knowledge of the tree's unreasonably dangerous condition before Scott's injury occurred. Thus, the trial court did not have jurisdiction over Scott's claim, and it lacked jurisdiction over the bystander claim that was filed by his son.

We reverse the trial court's judgment and render judgment for the City. We order the plaintiffs' claims against the City dismissed for lack of jurisdiction.

## Background

Scott lives in a home that faces Jackson Boulevard in Groves, Texas. Joseph Collazo lives across the street. A tree in Collazo's yard fell and hit Scott while Scott had his back to the tree and while Scott was raking his yard. Scott's son, a minor, was inside their home when the tree fell. The petition alleges Scott's son was "a bystander near the scene . . . and suffered extreme shock, fear and mental anguish as a result of direct emotional impact from a sensory and contemporaneous perception of the accident and injuries to his father."

Scott described what happened to him in a deposition, which is in the exhibits the plaintiffs filed to oppose the City's plea. Scott estimated

3

the tree that fell on him from Collazo's yard was more than thirty-feet tall. According to Scott, when he was hit by the tree it just "threw [him] forward," but didn't knock him down. Scott testified he injured his head and back, but he made it to his front porch before he collapsed.

Dr. Todd Watson, hired to testify by the City as an expert, has a doctorate in plant pathology. Dr. Watson, whose report is among the exhibits in evidence, attributed the tree's fall to "above normal" levels of rainfall in the area. Dr. Watson noted the area had experienced eighteen-inches of rainfall in September 2018 alone. He also stated the area had above normal levels of rain in October and November 2018, and the day the tree fell, the area received two inches of rain. Given the rain in the area over the two-year period before November 2018, Dr. Watson opined: "[T]he tree fell from root and soil failure[,] . . . likely [because] some of the roots were dead and decayed because of past flooding events and stress." Yet Dr. Watson also acknowledged that it was "obvious from photographs [of the tree taken after the incident] that the tree was partially alive with some dead branches." Even so, Dr. Watson testified the presence of dead limbs in the tree "does not necessarily mean the entire tree would have fallen."

Frank Thibodeaux, hired to testify by the plaintiffs as their expert witness, has a master's degree in urban forestry. Thibodeaux wrote a report, which the plaintiffs filed to support their response to the City's plea. Thibodeaux reached the following conclusions in his report: (1) the weather played no part in causing the tree to fall; (2) the City's "maintenance of the subsurface utilities (water and sewer) in right-of-way (within the subject tree's root plate) more likely than not led to the decayed condition and failure of subject tree[;]" (3) he would have expected "any lay person to see this tree appear[ed] to be dying or dead[;]" and (4) the work the City performed in the easement near the tree over the years led to "a prolonged period of senescence, slow death, and eventual failure of the tree."

For the purpose of the hearing on the City's plea, the Lovelaces' Third Amended Petition was their live pleading. The petition alleges the City had actual and constructive knowledge of the unreasonably dangerous condition—the "dead tree"—which fell and struck Scott. The petition alleges that Collazo owned the property where the tree was located and alleges the City has a right-of-way there. The petition concludes that both Collazo and the City had a duty to Scott to exercise

ordinary care and to take reasonable steps to either remove the tree, to warn Scott of the tree's dangerous condition, or to otherwise make the condition of the premises safe.[3]

As to the City, the plaintiffs relied on the Tort Claims Act, section 101.021, to establish the legislature waived the City's immunity from suit so the trial court could exercise jurisdiction over their claims.[4] The petition asserts the City was liable for causing Scott's injury under the Tort Claims Act on three theories: (1) a premise-liability claim, which is tied to the tree's location in the City's right-of-way; (2) a special defect claim, which alleges the City should have known of the dangerous condition of the tree before it injured Scott; and (3) a motor-driven equipment claim, which is tied to the plaintiffs' theory that when City employees installed pipes for its stormwater and water system in the right-of-way the employees damaged the tree's roots. The plaintiffs also alleged the City was liable to them on a constitutional nuisance claim, which the plaintiffs allege the City caused by "creating and/or

---

[3]Collazo is a defendant in the trial court, but he is not a party to this appeal.

[4]Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Governmental Liability).

6

contributing to create the nuisance at issue (the dead/rotten tree) through installation, maintenance and use of the [City's] equipment [in the easement]."

The City challenged the trial court's authority to adjudicate the dispute by filing a combined plea to the jurisdiction and motion for summary judgment.[5] Generally, the combined plea and the evidence the City filed supporting it assert that, before the tree fell, no one from the City knew the tree was dead or knew the tree was in the City's right-of-way.

For example, the evidence the City filed includes the affidavit of Brad Bailey, the City's mayor. Bailey also lives next door to the Lovelaces. In his affidavit, Bailey swore that before November 17, the day Scott was injured, he had noticed and picked up dead branches that had fallen onto the street from the tree in Collazo's yard. Even so, Bailey continued, he didn't "pay any attention to the tree in question." As to

[5]A plea to the jurisdiction is a dilatory plea that is used to defeat a plaintiff's cause of action without regard to whether the plaintiff's claims have merit, as the plea requires the court to decide whether it has subject matter jurisdiction over the plaintiff's case. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Bailey's knowledge about whether the tree was in danger of falling and whether it was in the City's right-of-way, Bailey swore:

> I had no clue it was about to fall, did not think that it was dead or subject to falling, did not know or believe it was on the City of Groves['] property, never perceived there was a danger from that tree falling across the street, never spoke with anyone about there being a danger it would fall, never reported to a private citizen or to the City of Groves any type of concern about the tree falling, was never told by anyone the tree was in danger of falling, and there was nothing to alert me to the fact the tree was about to fall or posed some danger of falling at any point before it actually fell on November 17, 2018.

In another affidavit, D.E. Sosa, the City's manager, swore that typically, he would be the person who would be notified of concerns about problems in the City's right-of-way. According to Sosa, the first time the City learned about "this tree . . . was when the Fire Department notified the Public Works Department for the [C]ity of Groves sometime after the accident on November 7, 2018, [that an accident] had occurred." Sosa swore that before November 7, to his knowledge, "no employee or official of the City . . . had received . . . any complaint and/or report, nor had they made any complaint, report or observation that the tree was dead, that the tree was in danger of falling, that the tree was dangerous[,] or [ ] about to fall."

8

The Lovelaces responded by filing evidence opposing the City's combined plea. The plaintiffs' evidence includes a survey drawing of Collazo's lot, which was done by a surveyor that Collazo hired around four months after the tree fell. It shows the surveyor, Randall Creel, found a stump hole and 30-inch-tree stump in the City's right-of-way. According to the notes near the bottom of Creel's drawing, the stump hole he found is "IN PUBLIC R.O.W. BY [ONE FOOT, EIGHT INCHES]."

For its part, the City doesn't dispute that City equipment, which includes a water meter, underground pipe and drain line, are on Collazo's side of the street on Jackson Boulevard and in the City's right-of-way. As to this equipment, the plaintiffs' evidence shows that City employees used an excavator to install a sewer line in the City's right-of-way on Collazo's side of the street in 2002. In 2003 and 2008, City employees replaced the water meter serving the house where Collazo now lives. The water meter to Collazo's home is near the base of the tree.

The plaintiffs also produced other evidence that City employees were in the neighborhood around Jackson Boulevard before the tree fell. For example, the record shows City employees connected or disconnected water-utility services to Collazo's home three times in the year before the

9

tree fell, twice in March 2018 and once in November 2017. Once a week, City employees drove garbage trucks on Jackson Boulevard to pick up the trash cans that residents placed outside their homes on Jackson Boulevard. Once a month, a City employee drove a truck down Jackson Boulevard while using an electronic device in the truck to gather signals from water meters so the meter readings could be taken remotely.

In response to the arguments raised in the plaintiffs' response, the City argued that when properly characterized under the Tort Claims Act, the plaintiffs' claim was a premise-defect claim and not special defect claim under the Act. So they argued that because the plaintiffs couldn't show the City had actual knowledge of the alleged defect before the tree fell on Scott, they couldn't prove the City's governmental immunity from suit had been waived. After conducting a hearing, the trial court denied the City's combined plea without stating a basis for its ruling.

### Standard of Review and Applicable Law,
### The Texas Tort Claims Act

We review trial court rulings on pleas to the jurisdiction de novo.[6] We look first to the facts the plaintiffs pleaded in their petition to

---

[6]*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

10

determine whether the petition affirmatively demonstrates the trial court's subject-matter jurisdiction over the dispute.[7] We construe the petition liberally and in the plaintiffs' favor, looking to the plaintiffs' intent.[8] When the defendant's plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence, and when necessary, it must do so to resolve the jurisdictional issues the pleadings raise.[9]

If the evidence the parties submit implicates the merits of the case, the standard of review we follow generally mirrors the standard followed in motions for summary judgment.[10] Under that standard, the burden is on the governmental unit that filed the plea to present evidence to support its plea.[11] When the governmental unit meets its burden, the burden shifts to the party opposing the plea to show that a disputed issue of material fact exists on the jurisdictional issue.[12]

---

[7]*Id.* at 226.
[8]*Id.*
[9]*Id.* at 227 (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555).
[10]*Id.* at 227-28; *see* Tex. R. Civ. P. 166a(c).
[11]*Miranda*, 133 S.W.3d at 228.
[12]*Id.*

11

When examining evidence on a plea, we take as true the evidence favoring the party opposing the plea and we indulge every reasonable inference and resolve any doubts in that party's favor.[13] If the evidence creates a fact issue on the jurisdictional issue, the trial court may not grant the plea, and the issue of fact needed to resolve the jurisdictional issue is left to the factfinder based on the evidence presented in the trial.[14] But if the undisputed evidence establishes no jurisdiction exists, or if it fails to raise a fact issue on the jurisdictional issue, whether the trial court has subject-matter jurisdiction of the dispute is decided as a question of law.[15]

As political subdivisions of the state, governmental immunity protects cities from being sued unless their immunity from suit has been waived by a statute waiving the entity's right to governmental immunity in clear and unambiguous language.[16] When a governmental unit like a city is immune from suit, its allegations implicate the trial court's subject-matter jurisdiction over the suit, meaning the power the trial

---

[13]*Id.*
[14]*Id.* at 227-28.
[15]*Id.* at 228.
[16]*City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457 (Tex. 2020).

court was delegated by the legislature to adjudicate the dispute on its merits.[17]

Cities seeking to challenge a trial court's power to adjudicate a lawsuit generally do so by filing pleas to the jurisdiction.[18] They may also raise claims of immunity by filing motions for summary judgment on evidentiary grounds.[19] Here, the City challenged the trial court's right to adjudicate the dispute by combining their plea with a traditional and no-evidence motion for summary judgment.

In the trial court and here, the Lovelaces argue that the Texas Tort Claims Act waives the City's immunity from suit for the claims on which they based their suit. In their Third Amended Petition, which is their live pleading, the Lovelaces alleged the tree that fell on Scott and caused his injuries raised both a premise and a special defect claim, which were waived by the Act. The plaintiffs further alleged the City used motor-driven equipment when installing a water meter and piping in its right-of-way, work that involved excavating near the base of the tree. They

---

[17]*See EBS Sols, Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020).

[18]*City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017).

[19]*Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550-551 (Tex. 2019); *see also* Tex. R. Civ. P. 166a.

13

claimed the City's use of that equipment "caused and contributed to cause the tree to become dead and rotten and fall[.]"

In the trial court, the Lovelaces argued the City was liable to them for Scott's injury because the City had damaged the tree's roots when using motor-driven equipment to install a water meter and piping in the right-of-way. Under the Tort Claims Act, the legislature waived governmental immunity for injuries caused by a governmental unit's employee's operations or use of motor-driven equipment while in the course and scope of their employment "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."[20]

The TTCA also provides a limited waiver of governmental immunity for premise defect claims.[21] For example, the TTCA waives governmental immunity for the varied unreasonably dangerous conditions that a factfinder may determine exists on a governmental unit's premises,

_____

[20]Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

[21]*See id.* §§ 101.022(a) (providing for governmental unit's liability for premise defects), (b) (providing for governmental unit's liability for special defects), .025 (waiving sovereign immunity to suit "to the extent of liability created by this chapter" and allowing person with claim under TTCA to sue governmental unit for damages); *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115-16 (Tex. 2010) (per curiam).

defects the Act categorizes as "premise defect[s]."[22] The legislature also waived governmental immunity for "special defects," a subset of premise defects, which consist of defects like "excavations or obstructions on highways, roads or streets[.]"[23]

The classification of the defect as a general or as a special defect matters because it affects the duties the governmental unit owes the person who is injured while on the government's premises.[24] For premise defect claims under the TTCA, the plaintiff must generally plead and prove:

> (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee.[25]

Proving a governmental unit possessed actual knowledge of a defect, however, is more onerous than proving that it had constructive

---

[22]Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).

[23]*Id.* § 101.022(b).

[24]*Id.* § 101.022; *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam).

[25]*See Sampson*, 500 S.W.3d at 391. Additionally, plaintiffs may recover if they plead and prove the governmental unit engaged in willful, wanton, or grossly negligent conduct. *Id*. But the Lovelaces didn't allege the City engaged in willful, wanton, or grossly negligent conduct.

knowledge (should have known) of the unreasonably dangerous condition. For example, it doesn't satisfy the actual knowledge requirement if the proof merely shows that government employees knew "materials deteriorate over time and may become dangerous[,] . . . [as] the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time."[26]

When they exist, special defects on premises under government control place a greater duty of care on the government and its employees than when the defect is classified as an ordinary premise defect.[27] When classified as a special defect, the government owes the person injured on the government's premises the same duty that a private landowner owes to an invitee. "Whether a condition is a special defect is a question of law."[28] If the defect is classified as a special defect, the duty the government owes to the user of its premises requires the government to use ordinary care to reduce or eliminate an unreasonable risk of harm

---

[26]*City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006).
[27]*Compare* Tex. Civ. Prac. &  Rem. Code Ann. § 101.022(b), *with id.* § 101.022(a).
[28]*Hayes*, 327 S.W.3d at 116.

16

created by the special defect of which the government is or reasonably should be aware.[29] That said, when deciding whether a condition is a special defect, our Supreme Court has cautioned: "The class of special defects contemplated by the statute is narrow."[30] In deciding whether a special defect exists the focus is on the expectations of an "'ordinary user' who follows the 'normal course of travel.'"[31]

## Analysis

In the first six issues of the City's brief, the City argues the plaintiffs' pleadings and the evidence the trial court considered in ruling on the City's plea fails to show the City's governmental immunity was waived for Scott's claims that he was injured by 1) motor-driven equipment, 2) a condition or use of tangible personal property, 3) a condition or use of real property, 4) a special defect, or 5) a nuisance. In the City's sixth issue, it argues the trial court erred in considering the report from the plaintiffs' expert in urban forestry, Thibodeaux, over the City's objections that the report shouldn't have been admitted because Thibodeaux's opinions are

---

[29] *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).
[30] *Hayes*, 327 S.W.3d at 116.
[31] *Id.*

conclusory and were not based on competent summary-judgment evidence.

*The Motor-Driven Equipment and*
*Tangible Personal Equipment Claims*

First, we consider whether the plaintiffs' claims arose from the City's operation and use of motor-driven equipment. The Tort Claims Act waives a city's governmental immunity for personal injury claims "arise[ing] from the operation or use of a motor-driven vehicle or motor-drive equipment[.]"[32] But here, the evidence shows the tree fell from rotting over time and not because it was hit by any of the City's motor-driven equipment, which then caused it to fall.

Without question, the plaintiffs' theory is that the City used motor-driven equipment and cut some of the tree's roots, which weakened the tree and over many years, starved the tree, and caused its death. In their petition, the plaintiffs alleged the City's use of motor-driven equipment in the right-of-way "contributed to causing the dead, dangerous condition of the tree[.]" The evidence supporting the claim includes deposition testimony from City employees, which shows the City installed a sewer

---

[32]Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A).

18

line and a water meter in the right-of-way more than a decade before the tree fell. The plaintiffs also filed a report from their urban forestry expert, Thibodeaux, whose report states the City's work in the easement over the years "more likely than not led to the decayed condition and failure of the tree."

Still, the Tort Claims Act requires the government's tortious act to "relate to the defendant's operation of the vehicle rather than to some other aspect of the defendant's conduct."[33] And in its appeal, the City argues there "is no evidence that any yet to be identified employee could be held liable under Texas law, for any yet to be identified act or omission involving the operation or use of any yet to be identified motor driven equipment, which allegedly caused injury some 16 years later."

We agree with the City that there is no evidence in the record raising an issue of material fact about whether any City employee's *negligent* use of motor-driven equipment in the right-of-way proximately caused the tree to fall on Scott. The survey drawing in evidence shows that before the tree fell, the tree in question was located just inside the City's right-

---

[33]*Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 928 (Tex. 2015).

of-way on Jackson Boulevard. By statute, home-rule municipalities like the City have "exclusive control over and under the . . . streets . . . of the municipality."[34] Here, no one disputes that the City had the right to install City-owned pipes, drains, and meters in its own right-of-way. Moreover, there is no testimony in the record that the City acted negligently in performing the work when it dug the ditch to lay the lines to install the pipes in the right-of-way, or that the City negligently installed the City's water meters there.

Without evidence of tortious conduct, meaning negligence, there is no tortious act that relates to the City's use of any motor-driven equipment. The plaintiffs did not claim the City damaged a tree located outside the City's right-of-way. Nor did they claim that City employees dug in areas where the City had no legal right to dig. For the City to be liable to Scott under the Tort Claims Act for operating equipment, the plaintiffs needed to show an "employee would be personally liable to the claimant according to Texas law" to establish the Tort Claims act waiver

---

[34]Tex. Transp. Code Ann. § 311.001(a).

applied to their claims.[35] They failed to make that showing on the record before us here.

We reach the same result as to the plaintiffs' claim alleging the City employees injured Scott by installing City-owned tangible personal property in the right-of-way "at or near the base of the tree."[36] The waiver that applies to the use of tangible property also requires plaintiffs to show the "governmental unit would, were it a private person, be liable to the claimant according to Texas law" to establish the Tort Claims Act waiver applies to the claim.[37] The utilities at issue are in the City's right-of-way. Since the parties agree the City had the right to install the utilities within the City's right-of-way, a City employee would not have been negligent in cutting some of the tree's roots installing equipment in a location over which the City had a right of control.[38]

*The Premise and Special Defect Claims*

The Tort Claims Act generally limits a governmental unit's duty to those who may be injured by defects on government property "by

---

[35]Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B).

[36]*Id*. § 101.021(2).

[37]*Id*.

[38]*See* Tex. Transp. Code Ann. § 311.011(a); Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B)(2).

classifying the user of the government's property as a licensee rather than an invitee."[39] That said, when the plaintiff's injury is caused by a special defect like an excavation or an obstruction on a highway, road, or street, the government's duty to the plaintiff isn't as limited.[40] Special defects "include other defects of the same kind or class as the two expressly mentioned in the statute."[41]

Lovelace claimed that, when the tree fell, "it qualified as both a premise defect and a special defect." He alleged the City had actual and constructive notice of the unreasonably dangerous condition of the dead tree and failed to exercise ordinary care to keep its right-of-way in a safe condition or to warn him of the danger of the tree.

We address the plaintiffs' special defect claim before addressing their ordinary premise-defect claim. It's undisputed the tree was standing until it fell and injured Scott. Generally, conditions are considered special defects like the two identified in the statute "only if they pose a threat to the ordinary users of a particular roadway."[42] Until the tree fell and

---

[39]*City of Denton v. Paper*, 376 S.W.3d 762, 763 (Tex. 2012); Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).
[40]Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b).
[41]*Paper*, 376 S.W.3d at 764.
[42]*Payne*, 838 S.W.2d at 238 n.3.

obstructed the street, it didn't prevent any cars from driving on Jackson Boulevard. The danger that Scott identified in his petition concerned the City's failure to remove a rotten, standing tree before it fell. And he sued the City because the tree fell on him and injured him while he was in his own yard, not because the tree was obstructing traffic in the street.[43] For all these reasons, the tree was not a special defect under the statute as to Scott's or his son's claims.[44]

Next, we address whether the evidence the plaintiffs filed raised a genuine issue of material fact on the issue of whether the City had actual knowledge  of the rotten and dangerous condition of the tree before it fell and injured Scott. Under the Tort Claims Act, an ordinary premise-defect claim requires the plaintiff to prove a fact issue exists on the issue of the government's actual knowledge to establish the trial court has jurisdiction to allow the case to proceed.[45] That is because in the ordinary premises defect claim, the legislature limited "the duty that a private person owes to a licensee on private property[.]"[46]

---

[43]*See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b).
[44]*Id.* § 101.022(a).
[45]*Sampson*, 500 S.W.3d at 385
[46]*See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a).

Under Texas law, the duty owed a licensee is "not to injure a licensee by willful, wanton or grossly negligent conduct" and "to use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the [entity] is aware and the licensee is not."[47] So the plaintiffs not only had to show the City knew the tree was in the right-of-way and had actual knowledge of the dangerous condition of the tree, but they also had to show the City had actual knowledge of the "dangerous condition at the time of the accident."[48] Stated another way, the plaintiffs needed to prove that some City employee or a City official realized either from the way the tree looked or from being notified by someone that a dead tree that was in danger of falling was in the City's right-of-way on Jackson Boulevard before Scott was injured by the tree.

Yet here, the evidence shows at most that the City had constructive knowledge of the tree's potential danger. There is no evidence showing that a City employee or official had actual notice of the dangerous condition of the tree before Scott's injury occurred. Depositions taken from City employees and the City's mayor show they denied knowing

---

[47]*Sampson*, 500 S.W.3d at 385 (cleaned up).
[48]*Hayes*, 327 S.W.3d at 117.

there was a dead tree in the right-of-way before the tree fell. Scott's deposition, which for the appeal we accept as true, shows that sometime after he was injured, he and Bailey were mowing grass when Scott "mentioned to him about [the tree] throwing branches on the street[.]" According to Scott, "I'm pretty sure I thought he said it was dead too." But even if accepting as true that Bailey acknowledged he thought the tree was dead, Bailey denied knowing the tree was in the City's right-of-way. And while Bailey also acknowledged having seen dead branches from the tree in the street before the tree fell, he swore "there was nothing to alert [him] to the fact the tree was about to fall or posed some danger of falling at any point before it actually fell[.]" Scott never claimed that he told Bailey before the tree fell that he (Scott) thought the tree was dead, in danger of falling, or in the City's right-of-way. Scott also testified that to his knowledge, Bailey was not knowledgeable about trees.

When Scott was deposed, he candidly admitted he "never expected the whole thing" to fall even though he too had seen branches that had fallen from the tree in the street. And there's simply no other evidence that anyone from the City was notified by any source there were any problems with the tree before it fell and injured Scott.

All in all, the evidence the Lovelaces point to doesn't show the City had actual knowledge of the dangerous condition of the tree before it fell on Scott. Even if the evidence supports the inference that the City should have realized the tree was dead from the fact it was dropping branches in the street, an issue we need not decide, the issue in this case is whether the City had *actual* knowledge of the dangerous condition of the tree before it fell on Scott.[49] Because the evidence doesn't raise a fact issue showing the City had that kind of knowledge, the trial court erred in concluding it had jurisdiction over the City under the Tort Claims Act.

### *The Nuisance Claim*

The plaintiffs' petition also raises a "constitutional nuisance" claim, as they alleged the City created a nuisance—the dead tree—by installing, maintaining, and using the utilities the City's employees installed in the easement. This nuisance allegedly "resulted in an interference" with the plaintiffs' "constitutional rights of use and enjoyment of their property, . . . which rights are protected by the Texas Constitution."

---

[49]We note the plaintiffs asked the Court to remand the case to the trial court to allow them to amend their petition and cure any deficiencies in their pleadings. But we have disposed of their premise-defect claim on the basis they presented no evidence of the City's actual knowledge of the defect, not because they didn't plead a sufficient claim.

26

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made[.]"[50] To start, the plaintiffs didn't plead or present any proof that their property was damaged when the tree fell on Scott. They sought to recover the type of damages that plaintiffs usually seek in personal injury cases—damages for pain, suffering, mental anguish, lost wages, and medical expenses. They also didn't plead or prove that their property was taken by the City and applied to a public use.

On top of those problems, the plaintiffs failed to plead or prove the City intended to take his property, or that it knew to a substantial certainty that the property damage resulting from the City's decision to lay the pipe was substantially certain to result from the City's actions in cutting the tree's roots and to maintain the City's water and storm utility systems in the City's right-of-way.[51] We have already explained how the plaintiffs failed to meet their burden to present any evidence to raise a fact issue showing that any City officials or employees knew the dead tree

---

[50]Tex. Const. art. I, § 17(a).
[51]*See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004).

was in the City's right-of-way before the tree fell on Scott. We have also explained there is no evidence in the record proving that any of the City's employees engaged in negligent conduct by cutting tree roots in the City's right-of-way to install pipes for its utility systems there.

Last, to avoid governmental immunity, plaintiffs may not alter the nature of their claims by recasting them as nuisance claims by artful pleading to avoid a plea to the jurisdiction. When evaluating a plaintiffs' petition, we are not bound by the petition when determining the true nature of plaintiffs' cause of action; instead, we may consider the entire record and depending on what it shows, decide what the plaintiffs' cause of action actually is depending on what the record shows the facts are that gave rise to the claims.[52]

The Lovelaces' petition states a claim for the accidental result of the City's act, that is the City's alleged negligence in failing to remove a dead tree in the City's right-of-way after it should have known a dead tree was there. The tree did not belong to Scott, and even though Scott claimed he was hit by the tree when it fell, the Lovelaces' real property was not

---

[52]*See Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 848 (Tex. 2022).

"taken or damaged for public use."[53] On this record, no valid factual basis exists to support the pleading of a constitutional nuisance claim.

## Conclusion

We conclude the plaintiffs failed to demonstrate that an issue of material fact proves that Scott's injury resulted from the City's operation or use of motor-driven equipment, the City's use of tangible personal property, a defect in the City's premises, or a special defect. We further conclude the plaintiffs do not have a constitutional-takings claim. We sustain issues one through five. We need not address the City's sixth issue, since resolving that issue in favor of the City would not give the City any greater relief.[54] We reverse the trial court's judgment and dismiss the plaintiffs' case against the City for lack of jurisdiction.

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on March 23, 2022
Opinion Delivered March 16, 2023
Before Horton, Johnson and Wright, JJ.

---

[53]*Jennings*, 142 S.W.3d at 313 (cleaned up).
[54]Tex. R. App. P. 47.1 (requiring opinions to address each issue that is necessary to resolving the appeal).

29