**Reversed and Rendered and Memorandum Opinion filed April 6, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00732-CV

---

**CITY OF HOUSTON, Appellant**

**V.**

**MARIA CARDENAS, Appellee**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2021-11078**

---

### MEMORANDUM OPINION

This is a personal injury case arising from Appellee Maria Cardenas's fall into a water meter box in downtown Houston (hereinafter, "the incident"). The City of Houston appeals the denial of its summary judgment motion, arguing that it was entitled to governmental immunity and the trial court erroneously denied its motion because the City did not have actual knowledge of the alleged dangerous condition at the time of the incident. We reverse the trial court's order and render judgment dismissing Cardenas's claim against the City for lack of subject matter jurisdiction.

BACKGROUND

Cardenas sued the City on February 25, 2021, alleging in her petition as follows:

> The incident happened at approximately 5:50 p.m., on Saturday, June 8, 2019 on Capitol Street, near Caroline Street, in Houston, Texas. Plaintiff was walking with her family down Capital Street, nearing Caroline Street, when she suddenly fe[l]l through the opening of the cast iron water meter box. The covering of the water meter box was not secured and as soon as Plaintiff stepped on the lid, it gave way and fell inside with the Plaintiff falling through the opening. Plaintiff sustained injuries to her right knee along with a large wound opening on her left leg.

In pleading a premises defect claim, Cardenas alleged that (1) the City "owned the sidewalk and controlled the water meter box where the incident occurred;" (2) the City's negligence in maintaining and servicing its water meter box was the proximate cause of the severe injuries she suffered; (3) "Plaintiff's injuries were a direct cause of a water meter box defect that caused the opening to fall through as soon as the plaintiff stepped on the water meter lid" and (4) the City "breached their duty of care by failing to warn of the danger posed by the water meter box or make repairs." The City filed its answer, entering a general denial and asserting governmental immunity as a bar to suit and as an affirmative defense to liability.

In June 2021, the City filed a traditional motion for summary judgment in which it argued that the trial court lacked jurisdiction over Cardenas's suit because the City had no actual notice of a problem with the replacement water meter cap prior to Cardenas's fall. The City attached in support of its motion: inspection photographs, photographs that Cardenas produced, service requests, work orders, 3-1-1 Helpline records, and affidavits from several City employees. In September 2021, Cardenas filed her amended response to the City's traditional motion for summary judgment, in which she asserted that the City had actual knowledge of

the premises defect before her fall because the evidence shows the City (1) "admitted to having a complaint of a missing water meter cap, which was first reported on October 3, 2018 and then again on October 5, 2018 for which a replacement had to be produced and installed on October 15, 2018;" (2) "has actual knowledge of the water meter caps floating away in flooding events, depending on the rate and amount of water flowing;" and (3) "is also aware of the caps being stolen and sold as scrap metal." A few days later, the City filed a reply in support of its summary judgment motion.

On November 12, 2021, the trial court signed an order denying the City's motion for summary judgment. The City filed a timely notice of interlocutory appeal on December 1, 2021.[1]

## STANDARD OF REVIEW

Subject matter jurisdiction is necessary to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *4 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.). A plaintiff must allege facts affirmatively showing the trial court has subject matter jurisdiction. *Tex. Air Control Bd.*, 852 S.W.2d at 446; *Manning*, 2021 WL 1257295, at *4. A party may challenge the lack of subject matter jurisdiction by a plea to the jurisdiction or by other procedural vehicles, such as a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.— Houston [14th Dist.] 2020, no pet.). Because subject matter jurisdiction is a question of law, we review the trial court's ruling *de novo*. *Tex. Dep't of Parks &*

_____

[1] This court has jurisdiction to consider an interlocutory appeal from the denial of a summary judgment motion by a governmental unit seeking a dismissal based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 541 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

*Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Manning*, 2021 WL 1257295, at *4.

To obtain a traditional summary judgment based on a lack of subject matter jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019). A nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'" *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). While the City asserted immunity by way of a traditional summary judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction. *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4.

The City challenged the existence of jurisdictional facts; therefore, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *See Miranda*, 133 S.W.3d at 227. "In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor." *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4. If the evidence creates a fact question regarding the jurisdictional

4

issue, the trial court may not grant the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28.

GOVERNMENTAL IMMUNITY

The City argues in its sole issue that the trial court erroneously denied its motion for summary judgment because it "established it did not have actual notice, or any notice at all, of the alleged dangerous condition of the lid on the water meter box at the time of the Incident on June 8, 2019," and, thus, governmental immunity has not been waived.

## A. Applicable Law

Under the common law doctrine of sovereign immunity, the state is immune from suit, meaning that it cannot be sued in its own courts without its consent. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Political subdivisions of the state, including cities, are entitled to such immunity — referred to as governmental immunity — absent a waiver. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). One such waiver can be found under the Texas Tort Claims Act ("TTCA"), which provides that a governmental unit[2] is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2); *see also City of Houston v. Gilbert*, 656 S.W.3d 603, 611 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

Absent certain exceptions not applicable here, the TTCA further provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *See* Tex. Civ. Prac. & Rem.

---

[2] The City is a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B).

Code Ann. § 101.022(a); *see also Gilbert*, 656 S.W.3d at 611. Here, the parties agree that the City owed Cardenas only a duty that a private person owes to a licensee. "The duty owed to a licensee on private property requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

## B.    Actual Knowledge

On appeal and in the trial court, the City argued that it is entitled to governmental immunity because it did not have actual knowledge of any defect or issue involving the water meter box or its lid during the eight months preceding the incident.

To establish the actual-knowledge element of a viable premises defect claim, the licensee, Cardenas, must show that at the time of the incident, the landowner knew about the dangerous condition. *See City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam). "'Awareness of a potential problem is not actual knowledge of an existing danger.'" *Id.* (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) (per curiam)). "'[T]he fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time.'" *Sampson*, 500 S.W.3d at 395 (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam)). To prove that it lacked actual knowledge, the City attached to its summary judgment motion affidavits from several of its employees as well as inspection photographs,

6

photographs that Cardenas produced, service requests, work orders, and 3-1-1 Helpline service request records.

The City's 3-1-1 Helpline records show that the City received three service requests eight months before the incident occurred. The first request was received from a caller in the afternoon on October 3, 2018; the Helpline records reflect a notation was made that the valve cover was missing. The second request was placed by the same caller in the morning on October 5, 2018; the records reflect the following notation: "Missing water meter cover along the sidewalk of given address. Placed one cone over it for safety and marking." The third service request was made by Water Inspector Julian Buxton after he investigated the location later in the day on October 5, 2018; the notation states: "Refer to meter shop for replacement of traffic lid steel oval type needed investigated from 13: 11 to 13:23." The only other 3-1-1 service request with respect to the water meter box was received by the City after Cardenas's injury and stated "hole in the sidewalk//citizen has fallen EMS called in the sidewalk."

Glenda Sylvien, Customer Service Manager, Resource and Client Services Branch, Public Utilities Division for both Houston Water and Wastewater Services, Houston Public Works, attested in her affidavit that the division received a service request for the location of the incident in the morning of October 5, 2018, for a missing valve cover. She further attested:

> Based on reviewing Service Request Number 12295892, on October 5, 2018, Inspector Julian Buxton from Houston Water was dispatched, inspected the location, and took six photographs to document the area, address and specific location of the missing water meter cap. Mr. Buxton identified the missing meter cap to be located at the 617 Caroline building on the Capitol side and placed a caution cone [there].

*          *          *

After Mr. Buxton realized this reported problem was an uncovered water meter rather than an uncovered water valve, he placed a warning cone on the condition and took photographs and then notified the meter shop that a traffic lid steel oval type replacement needed to be fabricated. Mr. Buxton also notified the Resource and Client Services Branch . . . that this location issue was not a water valve but a water meter cap and requested that the service request be transferred to Customer Account Services for handling.

Other than the one service request and Mr. Buxton's additions to the 3-1-1 forms, Resource and Client Services Branch, had no more requests or documentation for the intersection of Caroline and Capitol for the time period of June 8, 2018 until June 8, 2019.

Attached to the affidavit was a copy of the service request indicating a report date and time of 8:47 a.m. on October 5, 2018, stating "Missing water meter cover along the sidewalk of given address. Placed one cone over it for safety and marking . . . By BUXTON, JULIAN: 10/5/2018 2:02:55 PM . . . Refer to meter shop for replacement of traffic lid steel oval type needed. Investigated from 13:11 to 13:23."

Debra Vincent, Assistant Customer Service Manager, Customer Account Services (CAS), Houston Public Works, averred in her affidavit that she "was asked to complete a search in the CAS Infor Billing records, in addition to 3-1-1 System (Lagan) Service Requests assigned to CAS for the location of Caroline Street at Capitol Street in downtown Houston for the time period of June 8, 2018 until June 8, 2019, before Ms. Cardenas fell[,] for the oval metal cap seated within the metal box installed in the sidewalk over the water meter;" and she "was able to locate two (2) 3-1-1 Service Requests assigned to CAS and two (2) Infor (IPS) Work Orders related to this oval metal cap" for the location of the incident. Vincent also stated that the service requests were completed and "closed on October 15, 2018, with a single oval metal cap being installed over the metal box over the water meter by CAS staff."

8

James Bower, Inspector II in Customer Account Services (CAS), Houston Public Works, stated in his affidavit:

> After reviewing internal paperwork and photographs . . . regarding a water meter located at 617 Caroline, Houston, Texas 77002, I found that I had installed a replacement water meter cap at that location on October 15, 2018, at 12:09 p.m., but made no customer contact. I do/do not have independent recollection of replacing the water meter cap at this location.
>
> Even so, I have 5 years of on the job training and I know how to install the water meter cap with the hooks. The hooks go in one way where the rectangular water meter box has holes to hold the hooks in place. I would have made sure that the hooks were in place and that the water meter cap was flush with the water meter box and the sidewalk.

Lastly, the City's Transportation & Drainage Operations had no records regarding the water meter box prior to the incident. The only record that Transportation & Drainage Operations had was of the incident when a service request "was originally opened by Houston Fire Department EMS dispatcher Jennie Inman who called and stated there was a hole in the sidewalk and a pedestrian fell into it." The next day, "at 4:12:17 a.m., Transportation & Drainage employee Darrel Randle, reinstalled the cap."

Based on the evidence before us, we conclude that the City established that it lacked actual knowledge of any defect or issue involving the water meter box or its metal lid at the time of the incident.

Cardenas contends that "circumstantial evidence and prior reports of the potential danger created by the condition can raise a fact issue regarding actual knowledge," and here the City's evidence "reasonably supports the inference that [the City] actually knew of [the] potential danger presented by the water meter cap." In that regard, Cardenas argues that "the 311 reports and employee

9

statements" support the reasonable inference that the City was aware of the dangerous condition because (1) "[t]he two 311 reports detail a missing water meter cap before Mrs. Cardenas' incident, which was eventually replaced;" (2) City employee "Vincent's testimony demonstrates the City was aware of the metal caps floating away during floods, depending on the rate and amount of water flowing over the area;" (3) Vincent's affidavit demonstrates that "[t]he City was also aware of the caps being stolen and sold as scrap metal;" and (4) "[t]estimony by Mr. Dennis noting the requirement of a special tool to remove the cap would likewise lead to the inference that only City of Houston employees would have access to the special tool to dislodge the cap."[3]  We disagree.

First, two 3-1-1 service requests from October 2018, which stated that the metal cap on the water meter box was completely missing, cannot support a reasonable inference that the City was aware of any dangerous condition regarding the covered water meter box or that the properly installed cap might give way when a person stepped on it (especially when the incident was not caused by a missing cap).  Second, any testimony demonstrating that "the City was aware of the metal caps floating away during floods, depending on the rate and amount of water flowing over the area," is irrelevant under these facts and cannot support a reasonable inference that the City had knowledge of a dangerous condition in this case because here the cap was not missing and did not float away.  Instead, the cap was on the water meter box when Cardenas stepped on it.

Third, whether the "City was also aware of the caps being stolen and sold as scrap metal" is again irrelevant under these facts and cannot support a reasonable inference of actual knowledge of a dangerous condition when the cap at issue was

---

[3] According to his affidavit, Telley Dennis is the Division Manager in Customer Account Services (CAS), Houston Public Works, and he "manage[s] the meter installation, repair and reading services for Customer Account Services."

10

not stolen or missing but was on the water meter box at the time of the incident. Fourth, we are unclear how any testimony by Dennis about the necessity for a special tool to remove the metal cap from the water meter box is relevant or how it could support an inference that the City had actual knowledge of a dangerous condition at the time of the incident.

Based on the evidence before us, we conclude that Cardenas failed to raise a fact question as to whether the City had actual knowledge of any dangerous condition involving the water meter box at the time of the incident in June 2019. Because the evidence conclusively established that the City did not have such knowledge, the trial court lacked jurisdiction over Cardenas's premises defect claim and erred by failing to grant the City's motion for summary judgment.

Accordingly, we sustain the City's issue.

## CONCLUSION

We reverse the trial court's order denying the City's motion for summary judgment and render judgment dismissing Cardenas's claim against the City for lack of subject matter jurisdiction.


/s/ Meagan Hassan
   Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

11